THE STATE OF OHIO, APPELLEE, *v.*
GARCIA, APPELLANT.

(No. 3912 — Decided April 30, 1986.)

*Gregory White,* prosecuting attorney, for appellee.

*Michael M. Barkus,* for appellant.

BAIRD, J. This cause comes on before the court upon defendant's appeal from his conviction of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1). We affirm.

At approximately 3:40 a.m. on January 6, 1985, two Lorain police detectives, George Schrull and Geno Taliano, entered a bar in pursuit of a suspect pursuant to a radio dispatch. In the course of their search of the bar, Schrull entered the men's restroom where he encountered the defendant and another man, Scott Fowler. Upon entering the restroom, Detective Schrull smelled a strong odor of burnt marijuana and observed both the defendant and Fowler immediately place their hands in their pockets. Additionally, Detective Schrull observed an open jewelry box containing costume jewelry.

Detective Schrull called for his partner and both men were searched by the detectives. Detective Taliano found a jewelry box on the defendant containing folded packets of paper which his experience as a narcotics officer led him to believe were likely to contain cocaine. The defendant was arrested for possession of cocaine. Detective Taliano continued the search. The defendant was advised of his constitutional rights and was taken into custody and transported to the Lorain City Jail, where he was searched again. While at the jail, the defendant admitted to Detective Taliano that he had traded cocaine to Scott Fowler for a marijuana cigarette.

Defendant was originally charged with drug abuse and was bound over to the grand jury which returned an indictment charging him with aggravated trafficking in drugs, a third degree felony. Defense counsel filed a motion to suppress the tangible evidence and the statement defendant made to Detective Taliano. The court denied the motion to suppress the evidence and found that the officer had probable cause to search.

The case was tried to a jury which returned a verdict of guilty. Defendant filed a motion for relief under Crim. R. 33 which was denied. Defendant was sentenced to one year in prison. He appeals.

## Assignment of Error I

"The trial court erred in failing to grant defendant's motion to suppress four packets of cocaine found on defendant's person as a result of the search conducted on the defendant at the time of his arrest."

The Fourth Amendment to the United States Constitution protects

against unreasonable searches. In this case, defendant was searched after the detective entered a closed room, smelled the odor of freshly burnt marijuana, saw an open jewelry box, and watched defendant make a furtive gesture of shoving his hands in his pockets. Officer Taliano, who searched defendant, testified:

"* * * I entered the restroom per his [the other officer's] request, and immediately noticed that there was a thick smoke inside.

"This was a very small men's room; and I identified it immediately from past experience as being the pungent odor of burnt marijuana.

"I also observed Mr. Garcia; and Mr. Fowler and Det. Schrull had advised me that when he entered the restroom, that they had made a quick movement in an apparent attempt to conceal something in their pockets; and he also pointed out a pink jewelry box that was located on the back of the toilet, and it was open.

"And I observed pieces of jewelry inside that jewelry box.

"I took control of Mr. Garcia, the defendant, had him place his hands on the wall and made a protective search, initially to ascertain whether or not he had any weapons on his person; and then also to determine if there was any contraband on his person based upon the fact that the jewelry box and the marijuana smoke had led me to believe that that might be the case."

The evidence, then, is that defendant was being searched for weapons and contraband. The state does not rely on the officers' belief that defendant was armed and dangerous to justify the search simply as a pat-down for weapons. *Ybarra* v. *Illinois* (1979), 444 U.S. 85. Clearly, a pat-down for weapons could not justify opening the jewelry box that yielded cocaine. Rather, the state maintains that the officers had probable cause to search for contraband under these circumstances. We agree.

The odor of marijuana, standing alone, has frequently been held to provide probable cause for warrantless searches, particularly, as here, where the officers are experienced in its detection. Annotation, Odor of Narcotics as Providing Probable Cause for Warrantless Search (1981), 5 A.L.R. 4th 681. While the smell of freshly burned marijuana alone could have provided probable cause to search, here we have more. The furtive gestures of the defendant and the open jewelry box, along with the marijuana smell, could reasonably lead the officers to believe that a crime was being committed. The test for what is an unreasonable search and seizure is not rigid. The concept of good faith is measured by a number of factors, including the circumstances of the search, its place and duration, the extent of the intrusion, and the good faith suspicions of the law officer. *State* v. *Day* (1984), 19 Ohio App. 3d 252, 19 OBR 405, 483 N.E. 2d 1195. The officer had probable cause to search for marijuana; he found cocaine. The motion to suppress as to the cocaine was properly denied. Defendant's first assignment of error is not well-taken.

### Assignment of Error II

"The trial court erred in failing to suppress the testimony of Lorain police detective Geno Taliano in the particular of his hearsay account of defendant's alleged confession to drug trafficking, for the reason that the state failed to meet its burden of demonstrating that the alleged confession was a product of the accused's free and rational choice."

Once the admissibility of a confession is challenged, the prosecution

must prove its voluntariness by a preponderance of the evidence. *Lego* v. *Twomey* (1972), 404 U.S. 477; *State* v. *Melchior* (1978), 56 Ohio St. 2d 15, 25, 10 O.O 3d 8, 14, 381 N.E. 2d 195, 202. The test for determining whether an accused's confession was made involuntarily is whether, in light of the totality of the circumstances, the police obtained the incriminating statements by coercion or improper inducement. *State* v. *Arrington* (1984), 14 Ohio App. 3d 111, 14 OBR 125, 470 N.E. 2d 211, paragraph one of the syllabus. The testimony of the officer at the suppression hearing was that defendant made two statements regarding cocaine. Detective Taliano testified that, during the original search:

"I made the statement, 'It appears this may be cocaine.'

"And Mr. Garcia immediately advised me that it, in fact, was and that he had purchased that cocaine earlier in the evening to celebrate a friend's birthday.

"I took that under control and based upon the fact that I had found the contraband on his person and suspected it to be cocaine and based upon his unsolicited statement that, in fact, it was, I continued my search of the subject in the light that there might be other contraband on his person.

"I did locate another packet on his person.

"He was advised that he was under arrest. He was advised of his Constitutional Rights, handcuffed and placed in the custody of assisting Officer McCormack; and Mr. Garcia was transported to the Lorain Police Station where he went through the booking process."

After the defendant was booked he was again searched and additional cocaine was discovered. Again, Detective Taliano testified, in response to questioning by the prosecutor:

"Q. Did Mr. Garcia make any other statements to you regarding what he was doing in the restroom with Mr. Fowler that evening?

"A. Yes, he did.

"After Mr. Garcia was booked, he was brought to the Lorain Police Narcotics Bureau Office where Det. Schrull and I advised him of, again, his Constitutional Rights.

"Mr. Garcia had stated that he was aware of his Constitutional Rights and understood those and asked that he be returned to the booking room.

"En route to the booking room, Mr. Garcia turned to me and told me that he had, in fact, provided Scott Fowler with cocaine and that Scott Fowler had, in fact, provided him with marijuana; and that they had smoked marijuana in that restroom that night.

"There was no — I didn't continue any questioning. The statement made to me was unsolicited, and he was returned to the booking room.

"I had no further contact with the Defendant."

Upon cross-examination, the detective elaborated on the circumstances surrounding the statement given at the police station:

"[Q.] Officer Taliano, you say that that statement was unsolicited.

"What were you doing with Mr. Garcia?

"A. Referring to the statement in the restroom or at the Police Station, sir?

"Q. At the Police Station?

"A. I was returning him to the booking room.

"Q. Where had he been?

"A. In the Lorain Police Narcotics Bureau Office.

"Q. Why was he there?

"A. He had been brought there and again advised of his Constitutional Rights and asked if he wanted to make a statement.

"Q. The statement was solicited; am I correct?

"You solicited a statement from him?

"A. No, I advised him of his Constitutional Rights and advised him that we wouldn't talk to him unless he acknowledged the fact that he had been, in fact, advised of his Constitutional Rights.

"He stated he understood them, but didn't want to make a statement.

"Q. Did he sign a waiver of it?

"A. He refused to sign, but it was initialed by Det. Schrull and [me].

"Q. He was there for the purpose of your soliciting a statement from him, was he not?

"A. He was there for the purpose of being provided with his Constitutional Rights; and if he chose to make a statement, that statement would be taken.

"I personally advised him of his Constitutional Rights verbally at least 3 times; and I'm convinced he knew, in fact, what his Constitutional Rights were.

"Q. Why did you have to bring him down to the narcotics room to advise him of his Constitutional Rights?

"A. Because that's our procedure.

"That type of thing does not happen in the booking room. He is brought to the Detective Bureau, the bureau that is conducting the investigation; and he is advised of his rights.

"If there are any statements or continued investigation, that would be the place where that would take place.

"Q. Is this conversation on tape?

"A. No, sir.

"Q. Do you have any reason why you didn't tape this conversation?

"A. It's not our procedure to do so.

"If there was a statement to be made at that time, we might make that determination, but in the bureau office itself he was advised of his rights and he chose not to make a statement. So

there was no purpose for using the taping device."

The defendant made one entirely unsolicited statement regarding cocaine possession. He was immediately advised of his rights and arrested. Defendant's statements at the police station were, again, unsolicited. Defendant had been advised of his rights, had chosen not to make a statement and had refused to sign his waiver. Nevertheless, defendant did make a statement to Detective Taliano who testified that he did not question defendant further or pursue the statement specifically because defendant had not waived his rights. Under the totality of circumstances, then, there is no evidence that defendant was coerced or improperly induced into making the incriminating remarks. Rather, the evidence supports that, for whatever reason, defendant knowingly and voluntarily admitted to trafficking in cocaine. The prosecution met its burden of proving the voluntariness of the confession. The defendant's second assignment of error is not well-taken.

Assignment of Error III

"The trial court erred in failing to grant the defendant relief from the jury's verdict under Crim. R. 33, when both counsel for the state and the state's chief witness, a Lorain police officer, intentionally misled the jury as to certain facts of the case, denying the defendant due process of law."

Defense counsel attempted to introduce the original municipal court charge of possession of cocaine into evidence. In response to defense questioning, Detective Taliano testified that he placed charges of possession of cocaine and trafficking in cocaine against defendant. The grand jury indicted on aggravated trafficking. The defendant would now argue that the detective and the prosecution intentionally attempted to mislead the jury

by referring to the charges that the detective allegedly filed against defendant. The detective testified about the charges he filed; it was within the province of the jury to believe that testimony or choose not to believe it. Further, the prosecution, in closing argument, did not go beyond the evidence adduced at trial.

The court instructed the jury on several occasions that neither the remarks of the prosecutor nor the indictment was evidence. It is presumed that a jury will obey the trial court's instructions. *State* v. *Dunkins* (1983), 10 Ohio App. 3d 72, 10 OBR 82, 460 N.E. 2d 688.

Not only is there sufficient evidence to sustain a conviction here, but it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty. *State* v. *Smith* (1984), 14 Ohio St. 3d 13, 15, 14 OBR 317, 319, 470 N.E. 2d 883, 885-886.

Defendant's third assignment of error is not well-taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and GEORGE, J., concur.