OPINION
Plaintiff, Berry Network, Inc. ("Berry"), appeals from a summary judgment for Defendant, Magellan Health Services, Inc., f/k/a Charter Medical Corporation ("Magellan"), on Berry's claim on an account.
Berry is in the business of placing yellow pages advertising on behalf of its clients. Magellan owns and operates hospitals. In 1997, Magellan sold some of its hospitals to Charter Behavioral Health Systems, L.L.C. ("Charter").
Berry placed advertising on Charter's behalf from 1997 to 2000. Charter owed Berry approximately $2.8 million for unpaid services in that regard.
Berry learned that Charter might declare bankruptcy. Therefore, on a theory that Magellan remained liable for the amount Charter owed, Berry sued Magellan for $2.8 million. Berry's complaint was filed on February 15, 2000. Magellan filed an Answer on April 10, 2000, and an Amended Answer on August 3, 2001.
Charter filed bankruptcy the day after Berry's complaint against Magellan was filed. Berry filed a claim in the bankruptcy proceedings for $2.8 million as one of Charter's creditors.
Magellan's Answer and Amended Answer denied the allegations of Berry's claims for relief and set up a number of affirmative defenses. The parties thereafter conducted discovery, which appears to have produced over 43,000 documents sent by Magellan to Berry.
On September 19, 2001, approximately one and one-half years after the underlying action was filed, the bankruptcy court approved a settlement of Berry's claim for $2.8 million against Charter. The agreement created a "preference amnesty," whereby in exchange for $150,000 it had received from Charter, Berry agreed to waive its right to further compensation on its claim. The agreement contained the following paragraph concerning that release:
 "2. Release of the Debtors by the Creditor. Effective upon the execution and delivery of this Agreement, the Creditor hereby releases, acquits, and forever discharges the Debtors and each and every past and present shareholder, member, subsidiary, affiliate, officer, manager, director, partner, principal, agent, servant, employee, representative, accountant and attorney of the Debtors, from and against any and all claims, causes of action, rights, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorney's fees and disbursements) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent (collectively a "Claim"), which the Creditor may have or claim to have now against the Debtors or each and every past and present shareholder, member, subsidiary, affiliate, officer, manager, director, partner, principal, agent, servant, employee, representative, accountant and attorney of the Debtors, or which may hereafter arise out of, relate to, or be connected with any act of commission or omission of the Debtors of any shareholder, member, subsidiary, affiliate, officer, manager, director, partner, agent, servant, employee, representative, accountant, or attorney of the Debtors existing or occurring prior to the date of this Agreement. (Emphasis supplied.)"
 Two weeks after the bankruptcy court's approval of the agreementbetween Berry and Charter, on December 7, 2001, Magellan moved forsummary judgment on Berry's claim for relief in the underlying action.Magellan relied on the release in the agreement, arguing that becauseCharter was an "affiliate" of Magellan or a past "member" of Magellan'sgroup, Magellan was covered by the release, relieving it of any liabilityto Berry.
 Berry filed a motion opposing summary judgment. Berry presentedseveral arguments; that the release was ambiguous, that it was theproduct of a mutual mistake, and that it had resulted from a unilateralmistake on Berry's part. The latter argument relied on allegations thatCharter's attorneys, who also represented Magellan, had misrepresented orconcealed the relationship between the two companies that the releaseinvolves. Berry also requested additional time to discover evidence tosupport its arguments, pursuant to Civ.R. 56(F).
 The contract on which Berry's claims for release were based requiredapplication of the law of the State of Georgia to any dispute concerningthe rights and duties the contract imposed. The trial court, in adecision dated February 13, 2002, applied Georgia law to hold that therelease is not ambiguous, and that Berry's negligence in failing toanalyze the agreement more thoroughly did not prove unilateral mistake,which under Georgia law requires proof of fraud or inequitable conduct.The court found that Berry had abandoned its mutual mistake claim.Concerning Berry's Civ.R. 56(F) motion for additional time fordiscovery, as well as the merits of Magellan's motion, the court stated:
 "The Court notes Plaintiff's request for an oral hearing on this matter in addition to permission to conduct Civil Rule 56(F) discovery. However, as aptly and thoroughly argued by Defendant in its memorandum of January 15, 2002, this case has been pending before the court for a year and a half. Plaintiff has had ample opportunity to secure evidence necessary to avoid summary judgment. Further, an oral hearing on the clear and unambiguous language of the release is a total waste of judicial resources as well as an unnecessary burden to Defendant. Accordingly, the request for Civil Rule 56(F) discovery and an oral hearing is denied.
 "In conclusion, since the language of the release is clear and unambiguous and there is no indication of fraud, the intent of the parties is indicated by the language of the release and Defendant's motion for summary judgment is granted."
 Berry filed a timely notice of appeal. It presents three assignmentsof error.
 "FIRST ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN DENYING THE RULE 56(F) MOTION FOR DISCOVERY OF APPELLANT BERRY NETWORK, INC. ("BERRY") ON THE RELEASE ISSUES RAISED IN THE MOTION FOR SUMMARY JUDGMENT OF APPELLEE MAGELLAN HEALTH SERVICES, INC. ("MAGELLAN"), BECAUSE BERRY HAD NO OPPORTUNITY TO CONDUCT DISCOVERY ON THE RELEASE ISSUES BEFORE THE TRIAL COURT GRANTED SUMMARY JUDGMENT TO MAGELLAN."
Berry seeks a reversal of the summary judgment the court granted, though in so doing it "asks only that on remand it be allowed to conduct the discovery necessary to oppose Magellan's 2001 Motion for Summary Judgment based on the November 2001 release" of Charter by Berry. (Brief, p. 1).
Civ.R. 56 governs motions for summary judgment. Paragraph (F) states:
 "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."
Under Georgia law, Berry's claim of unilateral mistake required proof of fraud or inequitable conduct on the part of Magellan. Layfield v.Sanford (1981), 274 S.C.2d 450. Berry supported its Civ.R. 56(F) motion with the affidavits of three of its attorneys: Christine M. Haaker, Lawrence T. Burick, and William J. Brown.
Attorney Haaker's affidavit states that throughout the litigation between Berry and Magellan, its attorneys, who also represent Charter, expressly disclaimed and denied in interrogatory responses that there was any connection between Magellan and Charter, contending instead that the two "are separate and distinct entities." Haaker also stated that, in response to her later requests for an officer or employee who could testify concerning the relationship between the two that brought Magellan within the coverage of the release, Magellan's counsel had failed to produce one.
Attorneys Brown and Burick each represented Berry in its negotiations with Charter in the bankruptcy proceeding leading up to execution of the release. Both state that Charter's connection with Magellan was never revealed. With respect to the need for discovery, both attorneys point out that discovery of any connection between Charter and Magellan was not sought before Magellan's motion for summary judgment was filed because Magellan had not asserted the release as a defense to Berry's complaint.
In that connection, it should be noted that Magellan's Answer set up, as it Fifteenth Defense, a claim stating;
 "63. Plaintiff's claims are barred by the doctrine of release because, among other things, of the agreed-upon novation set forth above."
In its First Amended Answer to Berry's complaint, Magellan stated the following as its Fifteenth Defense:
 "63. Plaintiff's claims are barred, in whole or in part, by the doctrine of release because, among other things, of the agreed upon novation, quasi-new agreement pursuant to Code of Georgia Ann § 13-4-4, and assignment set forth above."
Magellan's novation claim appears to concern the argument in Magellan's second defense, which was that the assignment of its obligations to Charter operated as a novation which relieved Magellan of any duties it owed Berry.
Civ.R. 8(C) identifies certain affirmative defenses, release being one, and the rule requires that they shall be "set forth affirmatively." "The general rules of pleading applicable to a statement of a claim are equally applicable to the statement of an affirmative defense." Klein/Darling, Ohio Civil Practice, Baldwin, Section 8-14. "Paragraphs (A) and (E) of Rule 8 have been interpreted to require that `sufficient operative fact be concisely set forth in a claim so as to give fair notice of the nature of the action . . ." Id., at Section 8-1, quoting DeVorev. Mutual of Omaha Ins. Co. (1972), 32 Ohio App.3d 38.
The release that Berry gave Charter was executed long after Magellan had filed its Answer and Amended Answer containing its affirmative defense of release, so it is unreasonable to now require Magellan to have identified the release that Berry gave Charter as an operative fact on which Magellan's affirmative defense of "release" was based. By the same token, however, Magellan's affirmative defense arguably does not encompass the Berry/Charter release. At the very least, it gives no fair notice of it. If the defense was inadequately pleaded, Magellan could not seek to prove it at trial over Berry's objection. Hoover v. Sumlin(1984), 2 Ohio St.3d 1. Because Civ.R. 56 concerns claims and defenseson which judgment may be available, Magellan's pleading failure wouldlikewise bar summary judgment on its release defense. Magellan mightintroduce the defense by way of an amended answer. Blackwell v. UAW(1984), 21 Ohio App.3d 110. It has not done that, however.
Berry doesn't argue a failure of pleading, though that defect explains why Berry didn't raise its unilateral mistake claim until after Magellan had filed its motion for summary judgment. The Haaker, Brown, and Burick affidavits portray the same causes, as well as possibly fraudulent or inequitable conduct on the part of attorneys representing Charter and Magellan. Berry requires proof of fraud or inequitable conduct for its claim of unilateral mistake. Layfield v. Sanford, supra.
As the trial court noted when it granted Magellan's motion for summary judgment, the case had by then been pending for a year and a half. However, Magellan's motion was filed but two months earlier, and it presented a claim relying on the Berry/Charter bankruptcy release that had not been an issue in the litigation between Berry and Magellan before that. Therefore, Berry could not reasonably be expected to have made discovery to support its claim of unilateral mistake concerning the release before Magellan's motion was filed. Berry reasonably required a continuance to perform that discovery in order to respond to Magellan's motion. The trial court abused its discretion when it denied Berry's Civ.R. 56(F) request to that purpose, and instead granted summary judgment for Magellan on its motion.
The first assignment of error is sustained.
 SECOND ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO MAGELLAN BECAUSE IT ERRONEOUSLY CONSTRUED FACTS AND MADE FACTUAL INFERENCES IN FAVOR OF MAGELLAN AND AGAINST THE NON-MOVING PARTY. FEBRUARY 2002 DECISION, PP. 1-2, 56.
 THIRD ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO MAGELLAN BECAUSE IT RESOLVED DISPUTED ISSUES OF FACT RATHER THAN DETERMINING WHETHER THERE EXIST ANY GENUINE ISSUES OF MATERIAL FACT. FEBRUARY 2002 DECISION, PP. 1-2, 5-6."
These alleged errors are rendered moot by our decision sustaining the first assignment of error. Therefore, per App.R. 12(A)(1)(b), we decline to determine them on their merits.
 Conclusion Having sustained the first assignment of error, we will reverse thejudgment from which this appeal was taken and remand the cause forfurther proceedings consistent with this opinion.
FAIN, J. and YOUNG, J., concur.