JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Richard Simmons ("Simmons"), appeals his convictions and sentence. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2004, Simmons was charged with assault of a peace officer and drug trafficking, each with a one-year firearm specification, carrying a concealed weapon, and having a weapon while under disability. The weapon under disability charge was tried to the bench, and the remaining charges proceeded to a jury trial, where the following evidence was presented.
 {¶ 3} In November 2003, Simmons was a passenger in a vehicle driven by Michelle Brewer ("Brewer"). The vehicle was stopped by police for non-illumination of the rear license plate and for display of a license plate which was not registered to the vehicle. Officer Michael Gelske ("Gelske") testified that when he initially approached Brewer's vehicle, he could only see the driver. As he got closer, he observed Simmons "slouched down" in the front passenger seat. Gelske told Officer Ricardo Lozado ("Lozado") that there was a passenger as Lozado approached that side of the vehicle.
 {¶ 4} Gelske testified that when Brewer rolled down the window, he smelled the odor of burnt marijuana. After asking Brewer to exit the vehicle, Gelske performed a pat-down and placed her in the back of the police cruiser.
 {¶ 5} Lozado testified that he observed Simmons make several furtive movements in the car. After Simmons rolled down the window, Lozado smelled burnt marijuana. Lozado then asked Simmons for identification and ordered him out of the vehicle. Lozado then escorted him to the rear of Brewer's car, where Gelske performed a pat-down. Gelske testified that when he reached near Simmons' belt, Simmons swung around and punched him in the chest. As Simmons reached into the waistband of his pants, Gelske struck Simmons, causing Simmons to drop a loaded handgun. Simmons then attempted to flee.
 {¶ 6} Lozado chased Simmons and tackled him to the ground. As Simmons struggled with both officers, he bit Lozado's arm and finger. During the struggle, Simmons suffered a broken nose and Lozado suffered bite wounds and a broken finger.
 {¶ 7} Brewer testified that she saw Simmons run from police. Recanting prior statements made to police, she testified that she did not see Simmons punch Gelske or struggle with the officers.
 {¶ 8} Police recovered a loaded handgun, fourteen packets of marijuana from Simmons' jacket, which Officer Keith Campbell testified were consistent with being packaged for sale, and a partially-consumed marijuana "blunt" from inside the car.
 {¶ 9} Simmons was found guilty of all charges. He was sentenced to one year in prison for assault of a peace officer (count one) and one year for the firearm specification, six months for carrying a concealed weapon (count two), six months for having a weapon while under disability (count three), and six months for drug trafficking (count four). Counts one and four and the firearm specification were to run consecutively. Counts two and three were to run concurrent to each other but consecutive to the other counts, for a total of three years.
 {¶ 10} Simmons appeals, raising four assignments of error.
 Inadmissible Evidence {¶ 11} In his first assignment of error, Simmons argues that the trial court violated his right against self-incrimination by permitting testimony regarding alleged statements he made to his parole officer.
 {¶ 12} The Fifth Amendment of the United States Constitution provides that no person shall be compelled to be a witness against himself. Thus, prior to any custodial interrogation, a person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of retained or appointed counsel during any such questioning. Miranda v. Arizona
(1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The United States Supreme Court has defined custodial interrogation as any questioning initiated by law enforcement officers after an individual has been taken into custody or otherwise been deprived of his freedom in some significant way. Id.; Berkemer v. McCarty (1984), 468 U.S. 420, 440,82 L. Ed. 2d 317, 104 S. Ct. 3138.
 {¶ 13} In support of his argument, Simmons cites State v. Gallagher
(1974), 38 Ohio St.2d 291, 313 N.E.2d 396, vacated (1976), 425 U.S. 257, on remand (1976), 46 Ohio St.2d 225, 348 N.E.2d 336, and State v.Shanley (Mar. 19, 1981) Miami App. No. 80-CA-32, for the proposition that testimony as to statements made by an accused to his parole officer are inadmissible at trial where the statements were in response to the parole officer's questions, and prior to the questioning the accused was not advised of his Miranda rights.
 {¶ 14} In Gallagher, after the defendant was detained by police, his parole officer questioned him in front of police regarding the location of a gun. The Gallagher court found that the defendant was entitled toMiranda warnings because he was in police custody. Similarly, inShanley, the defendant's parole officer visited him twice in jail for the purpose of obtaining a statement from him. The Shanley court suppressed the statements made to the parole officer because the statements were responses to the parole officer's questions and the defendant was not advised of his Miranda rights. Thus, in both cases, the defendants' parole officers initiated the contact and interrogations.
 {¶ 15} In the instant case, however, the contact and conversation was initiated by Simmons and not his parole officer, Angela Bragg ("Bragg"). Bragg testified that Simmons called her and informed her that he had been arrested and was in jail. During the telephone conversation, Simmons told her that he was "beaten up" by the police and had to be hospitalized. Bragg testified that he also told her that he had a gun in his possession when he was arrested. Therefore, we find Gallagher and Shanley
distinguishable from the facts before this court.
 {¶ 16} Moreover, statements made during phone conversations do not occur as a result of a custodial interrogation because there is no deprivation of freedom of action and an individual can terminate the conversation at any time by hanging up the phone. State v. Whaley (Mar. 25, 1997), Jackson App. No. 96CA779, citing State v. Peak (Jan. 16, 1992), Cuyahoga App. No. 59726; State v. Hall (Aug. 2, 1990), Cuyahoga App. No. 58622; State v. Maynard (June 8, 1989), Cuyahoga App. No. 55413.
 {¶ 17} While we recognize that Simmons was already in police custody when he called Bragg, the phone conversation was not a custodial interrogation as defined by Miranda. Instead, it was a voluntary phone call initiated by Simmons to his parole officer. Moreover, the record before us does not indicate that Bragg interrogated Simmons regarding the circumstances of his arrest. Therefore, Bragg had no duty to "Mirandize" Simmons and the trial court did not abuse its discretion in allowing Bragg to testify regarding alleged statements made by Simmons.
 {¶ 18} Accordingly, Simmons' first assignment of error is overruled.
 Denial of Motion to Suppress {¶ 19} In his second assignment of error, Simmons argues that the trial court erred in denying his motion to suppress because the officers did not have probable cause to search him following a traffic stop in which he was a passenger.
 {¶ 20} In reviewing a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542;State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See, State v. Curry (1994),95 Ohio App.3d 93, 96, 641 N.E.2d 1172, citing, State v. Schiebel
(1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. Id., citing, State v. Claytor (1993), 85 Ohio App.3d 623,627, 620 N.E.2d 906.
 {¶ 21} In Terry v. Ohio, the United States Supreme Court explained that the Fourth Amendment allows a police officer to stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot."Terry v. Ohio (1968), 392 U.S. 1, 9, 20 L. Ed. 2d 889, 88 S. Ct. 1868; see, also, State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. To justify an investigative stop, the officer must be able to articulate specific facts which would warrant a reasonably prudent police officer to believe that the person stopped has committed or is committing a crime. See, Terry, supra, at 27.
 {¶ 22} A traffic offense meets the requirements under Terry,
constituting reasonable grounds for an investigative stop. State v.Davenport, Cuyahoga App. No. 83487, 2004-Ohio-5020, ¶ 16, citing Statev. Carlson (1995), 102 Ohio App.3d 585, 596, 657 N.E.2d 591. However, the duration of the detention should be limited to the time necessary to make the traffic stop and issue a citation, unless the police have "reasonable suspicion" of criminal activity to continue the detention. State v. Foster (1993), 87 Ohio App.3d 32, 40,621 N.E.2d 843, citing State v. Hart (1988), 61 Ohio App.3d 37, 41,572 N.E.2d 141.
 {¶ 23} In the instant case, Officers Gelske and Lozado testified at the suppression hearing that they were following a vehicle which had no illumination for the rear license plate, which is a violation of R.C.4513.05(A). After "running" the license plate, they discovered that the license plate was not registered to the vehicle, a violation of R.C.4549.08(A)(3). Thus, the traffic offenses constituted reasonable grounds for an investigative stop.
 {¶ 24} Gelske testified that he approached the vehicle and when Brewer rolled down the window, an odor of burnt marijuana emanated from inside the vehicle. Lozado also testified that he detected the odor of burnt marijuana when Simmons rolled down the passenger window. Both officers testified that their training and experience made them familiar with this odor.
 {¶ 25} The odor of marijuana alone can provide probable cause for a warrantless search. State v. Perryman, Cuyahoga App. No. 82965, 2004-Ohio-1120, citing State v. Garcia (1986), 32 Ohio App.3d 38,513 N.E.2d 1350. In Garcia, the court upheld the warrantless search of an individual based in part upon the police detecting the odor of burnt marijuana. The court stated that "[T]he odor of marijuana, standing alone, has frequently been held to provide probable cause for warrantless searches, particularly, as here, where the officers are experienced in its detection." Id. at 39. See, also, State v. King, Cuyahoga App. No. 84909, 2005-Ohio-1744.
 {¶ 26} The officers' detection of burnt marijuana emanating from inside the vehicle established both a reasonable articulable suspicion and probable cause to justify a warrantless search of Simmons. Therefore, we find that the trial court did not err in denying Simmons' motion to suppress.
 {¶ 27} Accordingly, the second assignment of error is overruled.
 Consecutive Sentences {¶ 28} In his third assignment of error, Simmons argues that the trial court erred in imposing consecutive sentences because it failed to make the requisite statutory findings.
 {¶ 29} Pursuant to R.C. 2929.14(E)(4), the court may impose consecutive sentences for convictions of multiple offenses only after it makes three determinations: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) if the court also finds any of the following:
"(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(E)(4). See, also, State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473.
 {¶ 30} When a trial court imposes consecutive sentences under R.C.2929.14, it must also comply with R.C. 2929.19(B)(2)(c), which requires that the court "make a finding that gives its reasons for selecting the sentences imposed." The requirement that a court give its reasons for selecting consecutive sentences is separate and distinct from the duty to make the findings required by R.C. 2929.14(E)(4). Comer, supra. See, also, State v. Hudak, Cuyahoga App. No. 82108, 2003-Ohio-3805, citing,State v. Brice (Mar. 29, 2000), Lawrence App. No. 99 CA21. Moreover, "a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences." Comer, supra. These findings and reasons need not "directly correlate each finding to each reason or state a separate reason for each finding" but must be articulated by the trial court so an appellate court can conduct a meaningful review of the sentencing decision. State v. Cottrell, Cuyahoga App. No. 81356, 2003-Ohio-5806; Comer, supra, citing, Griffin Katz, Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan (2002), 53 Case W.Res.L.Rev. 1, 12.
 {¶ 31} In the instant case, the court made all the requisite findings and sufficiently stated its reasons to satisfy the requirements of R.C.2929.14 and 2929.19 for imposing consecutive sentences. The court first found that consecutive sentences were necessary to protect the public and punish Simmons. In so finding, the court listed Simmons' lengthy criminal record, which included multiple drug possession and trafficking convictions and a felonious assault conviction, with a firearm specification. The court also stated that Simmons was dangerous to society.
 {¶ 32} The court next found that consecutive sentences were not disproportionate to the seriousness of the offense. The court noted that Officer Lozado's career might be affected due to the injuries Simmons caused to his "gun hand." The court stated that Simmons "took Officer Lozado's career from him." The court also found that sentences for fourth and fifth degree felonies should be consistent with protecting the public from future crime and to punish the offender and that Simmons was not amenable to community control sanctions.
 {¶ 33} The court finally found that Simmons committed these crimes while he was on post-release control, which satisfied the final requirement in imposing consecutive sentences. The court also stated that the harm was so great that no single prison term would adequately reflect the seriousness of his conduct.
 {¶ 34} Based on these findings and reasons, we find that the trial court complied with the statutory mandates of R.C. 2929.14(E)(4) and2929.19(B)(2)(c). We further find no clear and convincing evidence that the sentence was unsupported by the record or contrary to law. Likewise, we find that the court properly considered Simmons' prior offenses in reaching its decision to impose consecutive sentences.[1]
 {¶ 35} Accordingly, Simmons' third assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 36} In his final assignment of error, Simmons argues that his trial counsel was ineffective for failing to file a pretrial motion for discovery pursuant to Crim.R. 16.
 {¶ 37} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 80 L. Ed. 2d 674,104 S.Ct. 2052. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal,87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citingStrickland, supra, at 687-688.
 {¶ 38} In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976),45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391, 358 N.E.2d 623, vacated on other grounds (1978), 438 U.S. 910, 57 L. Ed. 2d 1154,98 S. Ct. 3135; State v. Calhoun, 86 Ohio St.3d 279, 289, 1999-Ohio-102,714 N.E.2d 905.
 {¶ 39} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; Strickland, supra, at 686.
 {¶ 40} The failure to prove either prong of the Strickland test makes it unnecessary for a court to consider the other prong. Madrigal, supra, at 389, citing Strickland, supra, at 697.
 {¶ 41} In the instant case, Simmons argues that his trial counsel was ineffective because counsel failed to file a motion for discovery. Simmons argues that he was denied a fair trial because he was unable to assert a viable defense. However, he has failed to demonstrate how he was prejudiced by this alleged deficiency, or that the outcome of the trial would have been different.
 {¶ 42} Nevertheless, "the decision whether or not to submit a request for discovery is presumed to be a trial tactic which does not constitute ineffective assistance of counsel." State v. Northern (Dec. 26, 2001), Cuyahoga App. No. 35849, citing State v. Clayton (1980), 62 Ohio St.2d 45,402 N.E.2d 1189. The failure to file a motion for discovery, because it carries with it the potential for allowing the State to compel discovery, is a matter of trial tactics and strategy. State v. Nobles
(Oct. 13, 1983), Cuyahoga App. No. 46323. "`Debatable trial tactics do not constitute a deprivation of the effective assistance of counsel.'"Clayton, supra at 49, quoting People v. Miller (1972), 7 Cal.3d 562,573-574, 498 P.2d 1089.
 {¶ 43} Therefore, we find that Simmons was not denied the effective assistance of trial counsel because the failure to file a motion for discovery can be viewed as tactical. Furthermore, Simmons has failed to demonstrate that a "reasonable probability" existed that the outcome of the trial would have been different if his trial counsel had filed a motion for discovery.
 {¶ 44} Accordingly, the final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J. and Kilbane, J. Concur.
[1] We note that Simmons did not raise any argument concerning the applicability of Blakely v. Washington (2004), 542 U.S. ___,159 L. Ed. 2d 403, 124 S. Ct. 2531 at the trial court or on appeal. Therefore, we need not discuss Blakely. See, State v. Moore, Cuyahoga App. No. 83692, 2004-Ohio-5732; State v. Ford, Cuyahoga App. No. 84138,2004-Ohio-5610.
Nevertheless, this court has recently determined that the holding inBlakely is inapplicable when consecutive sentences are imposed that do not exceed the statutory maximum. State v. Lett, Cuyahoga App. Nos. 84707 and 84729, 2005-Ohio-2665. In Lett, we held that the findings required under R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c) do not violate an offender's Sixth Amendment right to a trial by jury as in Blakely. "The findings are permissible because they do not increase a sentence beyond the maximum available to the offender. They simply aggregate individual sentences." Id.