[Cite as *State v. Blevins*, 2016-Ohio-2937.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 103200

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BARRY BLEVINS

DEFENDANT-APPELLANT

### JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-592088-A

**BEFORE:** Boyle, J., Kilbane, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** May 12, 2016

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio   44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Aleksandra Chojnacki
        Mary McGrath
Assistant County Prosecutors
Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

**{¶1}** Defendant-appellant, Barry Blevins, appeals his convictions. He raises one assignment of error for our review:

> The trial court erred in denying the defendant's motion to suppress evidence and statements obtained in violation of his federal and state constitutional rights where police engaged in an unlawful search and custodial interrogation of defendant to elicit incriminating statements without providing *Miranda* warnings.

**{¶2}** Finding no merit to his appeal, we affirm the judgment of the trial court.

## I. Procedural History and Factual Background

**{¶3}** In December 2014, Blevins was indicted on eight counts: two counts of trafficking (cocaine) in violation of R.C. 2925.03(A)(2), with a one-year firearm specification; one count of drug possession (cocaine) in violation of R.C. 2925.11(A), with a one-year firearm specification; one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2); one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B); one count of receiving stolen property in violation of R.C. 2913.51(A); and two counts of having a weapon while under disability in violation of R.C. 2923.13(A)(2) and (3). All counts also carried a forfeiture specification.

**{¶4}** In February 2015, Blevins moved to suppress evidence against him. The state opposed Blevins's motion. After holding an evidentiary hearing, the trial court denied Blevins's motion.

**{¶5}** In June 2015, Blevins withdrew his previous plea of not guilty and pleaded no contest to all charges. The trial court imposed an aggregate sentence of three years in prison. It is from this judgment that Blevins appeals.

## II. Standard of Review

**{¶6}** A motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In *Burnside*, the Ohio Supreme Court explained this standard of review as follows:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982).

> Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (1997).

**{¶7}** Within his single assignment of error, Blevins raises several issues for our review: (1) whether the initial stop of Blevins was a valid investigatory stop, (2) whether Officer Sistek's questions to Blevins amounted to a custodial interrogation, and (3) whether the inevitable discovery doctrine applied as an alternative basis for denying Blevins's motion to suppress. We will discuss these issues together as they all relate to his sole assignment of error, i.e., whether the trial court properly denied his motion to suppress.

### III. Motion to Suppress Hearing

{¶8} The state presented Officer Scott Sistek, a patrol officer for the Cleveland Police Department. On December 17, 2014, around 2:00 a.m., Officer Sistek was "sweeping" parking lots in an area where there are a "bunch of apartments" because a man had recently reported that someone had broken into his vehicle. Officer Sistek was "just making sure there [were] no suspicious people in the parking lot" because they also had other reports of cars being broken into in parking lots in that area.

{¶9} Around 2:25 a.m., Officer Sistek encountered two males sitting in a vehicle with the lights on and the engine running. Officer Sistek approached the driver's side of the vehicle "just to see what they were doing, [and] engage them in casual conversation." Officer Sistek asked the driver of the vehicle, who was later identified to be Blevins, what he was doing. Blevins responded that he was "freaking a mild." Officer Sistek explained that "freaking a mild" meant that Blevins was removing the tobacco from a "Black and Mild" cigar. Officer Sistek observed Blevins removing the tobacco from the cigar.

{¶10} Officer Sistek then saw a piece of paper with what "looked like suspected marijuana inside of it" in the "front middle console." Officer Sistek also "smelled the odor of marijuana." Officer Sistek said that from his experience as a police officer, he was familiar with what marijuana looked and smelled like. At that point, Officer Sistek asked Blevins to step out of the vehicle. Officer Sistek told the passenger to place his hands "where he could see them on the dashboard." Officer Sistek explained that he did

not ask the passenger to step out of the vehicle because he did not have other officers to assist him.

{¶11} Officer Sistek told Blevins to put his hands on top of the vehicle. Officer Blevins stated: "Basically it's all officer safety at that point. Tell him to put his hands immediately on the car and I'm going to pat him down, and I'm going to ask do you have anything on you you shouldn't have." Officer Sistek said that he was concerned about being stabbed with a knife or heroin needle. Officer Sistek asked Blevins if he had anything on him that he should not have. Blevins responded that he had a gun in his "right front waistband." At that point, Officer Sistek "immediately called for another car to respond," and then handcuffed Blevins and removed the handgun. Officer Sistek said the gun was loaded with "nine rounds in the magazine."

{¶12} While waiting for backup assistance, Blevins told Officer Sistek that he had "a murder warrant [for] an incident from West 117th." Officer Sistek confirmed that Blevins had a murder warrant out for his arrest before the other officer arrived.

{¶13} Officer Sistek and the other officer searched Blevins's person "to make sure he had no other weapons or contraband on him." They found suspected cocaine in his "front pants pocket." At that point, Officer Sistek placed Blevins in the back of his zone car and *Mirandized* him. Blevins then told Officer Sistek that the white substance was cocaine.

{¶14} Officer Sistek searched Blevins's vehicle once Blevins was in the back of the patrol car. Officer Sistek found a mason jar on the front floor of the passenger side of the vehicle that contained what looked like marijuana inside of it.

{¶15} Officer Sistek also removed the passenger from the vehicle and searched him. The passenger had a warrant out for his arrest as well, so he was "taken to jail."

{¶16} Officer Sistek said that Blevins was also cited for possessing marijuana and either a suspended license or no license; he could not recall which one.

{¶17} On cross-examination, Officer Sistek agreed that he did not have any information that Blevins was engaged in criminal activity prior to approaching Blevins's vehicle. Officer Sistek further agreed that Blevins did not make any "furtive movements" or do anything that would make Officer Sistek think that he was trying to hide something, nor did Officer Sistek have any reason to believe that Blevins was dangerous prior to speaking with him. Officer Sistek also agreed that Blevins cooperated with him.

## IV. Fourth Amendment and a *Terry* "Stop and Frisk"

{¶18} The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Ohio Constitution, Article I,

Section 14, is nearly identical to its federal counterpart. *State v. Kinney*, 83 Ohio St.3d 85, 87, 698 N.E.2d 49 (1998).

{¶19} For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). This requires a two-step analysis. First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed. *Mapp v. Ohio*, 367 U.S. 643, 657, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

{¶20} Search warrants may be obtained upon a demonstration of probable cause to support the search to a neutral, detached magistrate. Crim.R. 41. Probable cause for a search is present when the totality of the circumstances make it fairly probable that particularly described evidence of a crime will be found. *Illinois v. Gates*, 462 U.S. 213, 238, 76 L.Ed.2d 527, 103 S.Ct. 2317 (1983). Probable cause requires a fair probability of criminal activity, not a showing by preponderance of the evidence or beyond a reasonable doubt. Moreover, in assessing probable cause or reasonable suspicion, a court must consider the facts in their totality. *State v. Gantz*, 106 Ohio App.3d 27, 35, 665 N.E.2d 239 (10th Dist.1995). Police officers may draw inferences based upon their experience and training in order to decide whether probable cause exists and, of course, those inferences may not be obvious to an untrained person. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶21} One such exception to the warrant requirement is an investigative stop (or *Terry* stop), which was established by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry*, the court held that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22. For a stop to be valid pursuant to *Terry*, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id*. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶22} "Once a lawful stop has been made, the police may conduct a limited protective search [sometimes called a "frisk"] for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others." *State v. Lawson*, 180 Ohio App.3d 516, 2009-Ohio-62, 906 N.E.2d 443, ¶ 21 (2d Dist.). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *State v. Evans*, 67 Ohio St.3d 405, 422, 618 N.E.2d 162 (1993), citing *Terry* at 24. To justify a pat-down, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* at 27.

**{¶23}** It is well recognized that the need for a protective pat-down becomes more urgent where drugs are involved. "The very nexus between drugs and guns can create a reasonable suspicion of danger to the officer." *State v. Thompson*, 1st Dist. Hamilton No. C-050400, 2006-Ohio-4285, ¶ 11. Further, "[r]ecognizing the prevalence of weapons in places where illegal drugs are sold and used * * * an officer's fear of violence when investigating drug activity is a legitimate concern that will justify a pat-down search for weapons." *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 23, citing *State v. Taylor*, 82 Ohio App.3d 434, 612 N.E.2d 728 (2d Dist.1992).

## V. Seeing and Smelling Marijuana

**{¶24}** Officer Sistek testified that he approached the vehicle to engage the occupants in casual conversation. Officer Sistek walked up to Blevins, who was the driver of the vehicle, and asked him what he was doing. There is no dispute that at this point Officer Sistek did not violate Blevins's Fourth Amendment rights.

**{¶25}** "An officer may approach an individual in a street or other public place for the purpose of a consensual encounter. A consensual encounter is not a seizure, so no Fourth Amendment rights are invoked. The individual must be free to terminate the consensual encounter or decline the officer's request." *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Moreover, a seizure has not occurred when an officer approaches a vehicle and questions its occupants. *State v. Boys*, 128 Ohio App.3d 640, 642, 716 N.E.2d 273 (1st Dist.1998), citing *State v. Johnston*, 85 Ohio App.3d 475, 620 N.E.2d 128 (4th Dist.1993).

**{¶26}** When Officer Sistek asked Blevins what he was doing, however, Officer Sistek immediately smelled marijuana and saw what he suspected was marijuana in a piece of paper in the middle console of the vehicle. Officer Sistek stated that based on his experience as a police officer, he was familiar with what marijuana looked and smelled like. It was at this point that Officer Sistek asked Blevins to step out of the vehicle. As the trial court found, Officer Sistek asked Blevins to step out of the vehicle having "seen and smelled quite enough."

**{¶27}** Officer Sistek did not violate Blevins's Fourth Amendment rights when he asked Blevins to step out of the vehicle because Officer Sistek had more than a reasonable suspicion that Blevins was engaged in criminal activity — he had probable cause of criminal activity once he smelled the marijuana and saw it in plain view. *See State v. Moore*, 90 Ohio St.3d 47, 50-51, 734 N.E.2d 804 (2000); *State v. Buckner*, 2d Dist. Montgomery No. 21892, 2007-Ohio-4329, ¶ 9-10; *State v. Perryman*, 8th Dist. Cuyahoga No. 82965, 2004-Ohio-1120, ¶ 20.

**{¶28}** In *Moore*, the police officer stopped the defendant for running a red light. When the defendant rolled down his window, the officer "detected a strong odor of fresh burnt marijuana emanating from the vehicle." *Id*. at 47. When the defendant stepped out of the vehicle, the officer also smelled the odor on the defendant. The officer searched the defendant's vehicle and the defendant's person, finding drug paraphernalia and marijuana. The trial court granted the defendant's motion to suppress, but the appellate court reversed. *Id.* The defendant appealed.

**{¶29}** The question before the Ohio Supreme Court in *Moore* was whether "the odor of burnt marijuana, alone, [was] sufficient to provide probable cause to search a defendant's motor vehicle" and a defendant's person.  *Id*. at 48.  The court explained that "[p]robable cause must be based upon objective facts that would justify the issue of a warrant by a magistrate."  *Id*. at 49, citing *State v. Welch*, 18 Ohio St.3d 88, 480 N.E.2d 384 (1985).  The Ohio Supreme Court upheld both searches because it found that the smell of marijuana alone by an officer experienced in smelling it was sufficient probable cause to search the defendant's vehicle and the defendant's person.  *Id*. at 51.

**{¶30}** Having found probable cause to search, the *Moore* court then addressed the question of whether an exception to the warrant requirement existed to justify the search of the defendant's vehicle and the defendant's person.  *Id.*  The court easily determined that the automobile exception to the warrant requirement existed to search the defendant's vehicle.  *Id.*  The court then went on to examine the "more problematic" question: the search of defendant's person.  It upheld the search of the defendant's person, however, based on the smell of marijuana on the defendant, reasoning:

> In order to obtain a warrant before searching defendant's person for possible narcotics, [the officer] would have had to permit defendant to leave the scene in defendant's vehicle.  Having to permit defendant to leave the scene alone, unaccompanied by any law enforcement officer, the dissipation of the marijuana odor, and the possible loss or destruction of evidence were "compelling reasons" for [the officer] to be able to conduct a warrantless search of defendant's person.  We find these to be exigent circumstances that would justify the warrantless search of defendant's person.

*Id.* at 52-53.

**{¶31}** This court has also held that the smell of marijuana alone gives police officers probable cause to conduct a warrantless search. *Perryman*, 8th Dist. Cuyahoga No. 82965, 2004-Ohio-1120, ¶ 26. In *Perryman*, a police officer pulled into a parking lot around noon, and observed two men reclining in the front seat of a vehicle. The officers approached the vehicle and knocked on the window. When the driver rolled the window down, the officer immediately smelled the "odor of burnt marijuana coming from the car." *Id.* at ¶ 3. Based on smelling the marijuana, the officer asked the driver to exit the vehicle and searched him. Another officer also searched the passenger, who was the defendant in the case (Perryman). Perryman had one large bag and 15 smaller bags of marijuana on his person.

**{¶32}** Perryman moved to suppress the evidence, arguing (as Blevins also does here) "that any intrusion beyond a citation for smoking marijuana or possession of marijuana under 100 grams, a minor misdemeanor, was unwarranted." *Id.* at ¶ 7. The trial court granted Perryman's motion and suppressed the evidence. The state appealed, arguing that the search of Perryman was valid because of the smell of marijuana emanating from the vehicle.

**{¶33}** This court held in *Perryman* that once the officers smelled burnt marijuana emanating from the vehicle, the smell established "both a reasonable articulable suspicion and probable cause that marijuana was being used or had just been used by the vehicle's occupants." *Id*. at ¶ 18. We further noted:

> The fact that smoking marijuana is a minor misdemeanor offense is of no consequence. Where the presence of marijuana or any drug is reasonably

suspected, the location, quantity and packaging are legitimate inquiries for the authorities based on the existing probable cause. *See* [*State v. Bird*, 4th Dist. Washington No. 92CA2, 1992 Ohio App. LEXIS 6797 (Dec. 31, 1992)]. Certainly, if only a small amount is found after an inquiry, then an arrest is not justified and a citation may be issued.

*Id.* at ¶ 19.

**{¶34}** We held that "[t]he seizure of marijuana from Perryman's person was not a violation of the United States or Ohio Constitutions since the officers had probable cause to search Perryman." *Id*. at ¶ 20. *See also State v. Simmons*, 8th Dist. Cuyahoga No. 85297, 2005-Ohio-3428 (search of defendant's person valid when officers smelled burnt marijuana when defendant rolled down the window of the vehicle); *Bird*, 4th Dist. Washington No. 92CA2, 1992 Ohio App. LEXIS 6797 (officer smelling marijuana upon approaching a parked car provided the requisite probable cause for both the search of defendant's person and the vehicle); *State v. Garcia*, 32 Ohio App.3d 38, 513 N.E.2d 1350 (9th Dist.1986) (odor of marijuana alone can provide probable cause to search).

**{¶35}** In this case, Officer Sistek smelled marijuana from inside the vehicle, but he did not state that he smelled marijuana on Blevins or emanating from Blevins. But Officer Sistek did not *just* smell marijuana here; he also *saw* it in plain view. Thus, although Officer Sistek did not smell marijuana on Blevins's person, the facts in this case are even stronger than they were in *Moore* and *Perryman* to establish probable cause to search Blevins's vehicle and person. As the trial court found here, Officer Sistek asked Blevins to step out of the vehicle having "seen and smelled quite enough."

{¶36} The fact that Officer Sistek said that he intended to conduct a pat-down for weapons is immaterial. In *Perryman*, this court noted that the officer "made no attempt to rationalize his search for contraband solely under the pretext of a *Terry* patdown." *Id*. at ¶ 19. We stated that "[w]hether we examine this case in the context of probable cause justifying a warrantless search or under a *Terry* standard for officer safety, the result would have been the same." *Id*. at ¶ 24.

## VI. Custodial Interrogation an Inevitable Discovery

{¶37} Regarding Blevins's argument that his statement about the gun in his waistband should be suppressed due to the fact that Officer Sistek did not give him *Miranda* warnings, we disagree. Even assuming for the sake of argument that Blevins was "in custody" for purposes of *Miranda* when he instructed Blevins to place his hands on his vehicle and asked him if he had anything on him that he should not have, Officer Sistek had probable cause to search Blevins's person. Thus, Officer Sistek would have lawfully found the gun on Blevins despite Officer Sistek's alleged illegal conduct. Thus, the doctrine of inevitable discovery would apply.

{¶38} The doctrine of inevitable discovery was established by the United States Supreme Court in *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). In *Nix*, the court held that illegally obtained evidence should nevertheless be admitted if it inevitably would have been obtained lawfully. *Id*. at 448. The court reasoned that if evidence obtained as a result of a constitutional violation would have ultimately been discovered through lawful means, then such evidence should be admissible because its

suppression would have no legitimate deterrent effect on illegal police behavior. *Id*. Under the inevitable discovery doctrine of *Nix*, illegally obtained evidence is admissible if the prosecution proves by a preponderance of the evidence that the police would have inevitably discovered it in a lawful manner. *Id*.

{¶39} The Ohio Supreme Court has adopted the inevitable discovery doctrine in *State v. Perkins*, 18 Ohio St.3d 193, 480 N.E.2d 763 (1985). The court held: "The ultimate or inevitable discovery exception to the Exclusionary Rule is hereby adopted so that illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *Id*. at the syllabus. *See also State v. Jackson*, 57 Ohio St.3d 29, 36, 565 N.E.2d 549 (1991) (applying the inevitable discovery doctrine).

{¶40} The inevitable discovery doctrine is appropriately triggered only in those instances where there has been an implementation of police investigative procedures that ultimately would have led to the certain discovery of the same evidence. In other words, the investigative procedures must have already been implemented prior to the discovery of the incriminating evidence through unconstitutional means. *See State v. Masten*, 3d Dist. Hancock No. 5-88-7, 1989 Ohio App. LEXIS 3723, *20-21 (Sept. 29, 1989) ("circumstances justifying application of the rule are most likely to be present if investigative procedures were already in place prior to the discovery via the illegal means").

**{¶41}** Here, Officer Sistek observed and smelled marijuana in Blevins's vehicle. Thus, he had probable cause to search Blevins and Blevins's car. Thus, under the doctrine of inevitable discovery, Officer Sistek would have found the gun on Blevins's person when he lawfully searched him.

**{¶42}** Accordingly, we overrule Blevins's sole assignment of error.

**{¶43}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, P.J., and
ANITA LASTER MAYS, J., CONCUR