[Cite as *State v. Lung*, 2019-Ohio-2962.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2018-12-088 |
| Appellee, | : | O P I N I O N |
| | | 7/22/2019 |
| | : | |
| - vs - | : | |
| | : | |
| BRENT A. LUNG, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2018CR00653

D. Vincent Faris, Clermont County Prosecuting Attorney, Katherine Terpstra, 76 South Riverside Drive, 2nd Floor, Batavia, OH 45103, for appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, OH 45103, for appellant

**M. POWELL, J.**

{¶ 1} Appellant, Brent Lung, appeals a decision of the Clermont County Court of Common Pleas denying his motion to suppress. For the reasons set forth below, we affirm.

{¶ 2} On June 29, 2018, Williamsburg Police Officer Justin Beatty was dispatched to an apartment shared by Monica Comberger and Lung regarding a domestic dispute.

While at the scene, the officer contacted dispatch to determine if Lung had active warrants. Dispatch advised the officer that there were no active warrants; however, Lung's driver's license was under suspension. Officer Beatty resolved the situation and left the scene.

{¶ 3} On July 19, 2018, while on duty, Officer Beatty stopped at a local convenience store to buy a drink. The store is located across the street from the apartment shared by Lung and Comberger. Upon entering the store, Officer Beatty saw Lung standing in line, recognized him, and recalled that Lung's driver's license was suspended. Curious as to whether Lung had driven to the store, the officer exited the store, returned to his police cruiser, and watched for Lung to exit the store.

{¶ 4} While waiting in his police cruiser, Officer Beatty noticed Comberger's car parked outside the store. Because Williamsburg is a small community, the officer knew that Lung drove Comberger's car. During the time he waited for Lung to exit the store, the officer did not contact dispatch to verify Lung's driver's license suspension. After about five minutes, the officer observed Lung exit the store, enter Comberger's car on the driver's side, and drive approximately 100 yards across the street and into the parking lot of the apartment complex where Lung lived.

{¶ 5} Officer Beatty followed Lung and initiated a traffic stop. The traffic stop was based entirely upon the officer's suspicion that Lung was driving under suspension. After initiating the traffic stop and approaching Lung, the officer confirmed that Lung's driver's license was still under suspension. During his interaction with Lung, the officer observed several indicia of intoxication leading him to suspect that Lung was under the influence of alcohol. Consequently, the officer administered several field sobriety tests. Lung's poor performance on the field sobriety tests confirmed the officer's suspicion that Lung was under the influence. Lung was arrested and transported to an Ohio State Patrol post where he refused to submit to a breath test.

- 2 -

{¶ 6} Lung was indicted on a third-degree felony count of operating a vehicle while under the influence of alcohol ("OVI") because of a prior felony OVI conviction. Lung filed a motion to suppress, arguing that Officer Beatty did not have "lawful cause to stop [and] detain" him due to a lack of a reasonable, articulable suspicion of criminal activity. A hearing on the motion was held on October 18, 2018. Officer Beatty was the sole witness to testify. On October 23, 2108, the trial court denied the motion. The trial court found that the information Officer Beatty had concerning Lung's suspended driver's license was a proper basis for the officer to initiate an investigative stop. The matter proceeded to a jury trial. On October 25, 2019, the jury returned a verdict finding Lung guilty as charged. Lung was subsequently sentenced according to law.

{¶ 7} Lung appeals, raising one assignment of error:

{¶ 8} THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶ 9} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. An appellate court must defer to the trial court's factual findings if they are supported by competent, credible evidence. *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 14. However, an appellate court independently determines, without deference to the trial court's decision, whether the facts satisfy the applicable legal standard. *State v. Cummins*, 12th Dist. Clermont No. CA2018-07-051, 2019-Ohio-1496, ¶ 22.

{¶ 10} The Fourth Amendment to the United States Constitution provides that

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

- 3 -

{¶ 11} "A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment and must comply with the Fourth Amendment's general reasonableness requirement." *State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 18, citing *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769 (1996). One type of traffic stop that is permissible under the Fourth Amendment is where a police officer has probable cause to stop a vehicle because the officer observed a traffic violation. *State v. Bullock*, 12th Dist. Clinton No. CA2016-07-018, 2017-Ohio-497, ¶ 6. The second type of lawful traffic stop is an investigatory stop, also known as a *Terry* stop. *Id.* at ¶ 7.

{¶ 12} "An investigatory stop of an automobile is proper under the Fourth Amendment where an officer has reasonable, articulable suspicion that a motorist is engaging or has engaged in criminal activity, including a minor traffic offense." *Hamilton v. Justice*, 12th Dist. Butler No. CA96-04-065, 1996 Ohio App. LEXIS 5780, *5 (Dec. 23, 1996), citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391 (1979). *See also State v. Anderson*, 11th Dist. Lake No. 2017-L-127, 2018-Ohio-2455; *State v. Scott*, 2d Dist. Clark No. 2013 CA 104, 2014-Ohio-4963. "While the concept of 'reasonable and articulable suspicion' has not been precisely defined, it has been described as something more than an undeveloped suspicion or hunch but less than probable cause." *State v. Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162, ¶ 15 (12th Dist.). "This obscure concept requires that an investigative stop be viewed in light of the totality of the surrounding circumstances, from the perspective of a reasonably prudent police officer on the scene guided by his experience and training." *Id.*

{¶ 13} This case involves an investigatory traffic stop. Lung argues that Officer Beatty violated the Fourth Amendment by initiating a traffic stop based upon unverified, "stale" information.

{¶ 14} In an early investigatory-stop case, this court found that an investigatory stop

initiated by a police officer with knowledge that the defendant's driver's license was suspended was supported by reasonable, articulable suspicion. *Middletown v. Profitt*, 12th Dist. Butler No. CA88-09-135, 1989 Ohio App. LEXIS 1438 (Apr. 24, 1989). In that case, the officer knew the defendant's driver's license was suspended based upon the officer's contact with the defendant in the city jail 60 to 90 days prior to the traffic stop. *Id.* at *2. Without discussing whether there was a need for the officer to first verify the dated information, we upheld the traffic stop on the ground that "[s]ince the officer knew that appellant had been under suspension, there was an 'articulable and reasonable suspicion' that appellant was unlicensed." *Id.* at *4.

{¶ 15} The weight of authority supports the view that information which is several days to a few weeks old is not "stale" in the sense that it is categorically unreliable. The trial court digested this authority in its Decision/Entry denying the motion to suppress.[1] Nevertheless, Lung argues that Officer Beatty had a duty under the Fourth Amendment to

---

1. Footnote 22 of the trial court's Decision/Entry cites the following decisions and their holdings: *Dayton v. Blackburn*, 2d Dist. Montgomery No. 11162, 1989 Ohio App. LEXIS 2310 (June 8, 1989) (stop of defendant who had suspended license two to three weeks prior thereto was a valid investigatory stop); *State v. Beleford*, 3d Dist. Seneca No. 13-06-32, 2007-Ohio-1912 (stop of defendant by officer who was told by another officer that, one week prior, the defendant's license was suspended was a valid stop and the information was not stale); *State v. Noll*, 9th Dist. Lorain No. 05CA008659, 2005-Ohio-4087 (stop of defendant by officer who knew that, one week prior, the defendant's license was suspended was a valid stop); *State v. Cumberland,* 4th Dist. Highland No. 704, 1990 Ohio App. LEXIS 1083 (Mar. 13, 1990) (stop of defendant 20 days after learning that she had a suspended license was a valid stop); *Akron v. Linn*, 9th Dist. Summit No. 18488, 1997 Ohio App. LEXIS 5298 (Nov. 11, 1997) (finding that an officer, who recognized the driver of a pickup truck based on a DUS citation from a month earlier, "had reasonable suspicion based on specific and articulable facts" that the driver had engaged in the illegal act of driving under a suspended license); *State v. Osborne*, 4th Dist. Pike No. 96CA584, 1997 Ohio App. LEXIS 1725 (Apr. 21, 1997) (noting that the stop of the defendant was valid where there was a 12-day gap between the officer learning of the defendant's suspended license and stopping him); *State v. Bailey*, 11th Dist. Ashtabula No. 95-A-0023, 1995 Ohio App. LEXIS 5883 (Dec. 29, 1995) (stop of defendant two weeks after learning that she had a suspended license was a valid stop); *State v. Lauch*, 122 Ohio App.3d 522 (1st Dist.1997) (citing cases finding time gaps of up to four weeks valid, finding stop of defendant nine days after learning that she had a suspended license was a valid stop); *State v. Honeyman*, 2d Dist. Champaign No. 90-CA-24, 1991 Ohio App. LEXIS 5167 (Oct. 22, 1991) (stop of defendant three to four weeks after learning that he had a license suspended was a valid stop); *State v. Johnson*, 2d Dist. Montgomery No. 16445, 1998 Ohio App. LEXIS 1047 (Mar. 20, 1998) (stop of defendant one week after learning that he had a suspended license was a valid stop). In contrast to the foregoing cases, the trial court cited *State v. Tackett,* 37 Ohio Misc.2d 9 (C.C.1987) (officer's knowledge that the defendant's driver's license was under suspension one to one and one-half months earlier was stale information; therefore, traffic stop was unconstitutional).

verify the information before stopping him.

{¶ 16} Just as we did not discuss the need to verify dated information in *Profitt*, neither is the issue discussed in the cases referred to by the trial court with the exception of *State v. Cumberland*, 4th Dist. Highland No. 704, 1990 Ohio App. LEXIS 1083 (Mar. 13, 1990); and *State v. Johnson*, 2d Dist. Montgomery No. 16445, 1998 Ohio App. LEXIS 1047 (Mar. 20, 1998).

{¶ 17} In *Cumberland*, the Fourth Appellate District upheld an investigatory traffic stop made upon suspicion that the defendant was driving under suspension based upon 20-day-old information. The appellate court found no constitutional requirement that the information be verified prior to initiating the traffic stop:

> In the case at bar, we believe the officer had an articulable and reasonable suspicion that appellant was unlicensed. The officer received information twice - once in the defendant's presence and once via the computer in the police station - that appellant did not have a license earlier that month. Prior to receiving the information, the officer had observed appellant driving on a daily basis. While the officer might have obtained information regarding appellant's driving status prior to stopping her on April 26, 1988, we believe the facts in the case at bar gave the officer probable cause to stop appellant.

*Cumberland* at *3-4.

{¶ 18} In *Johnson*, the Second Appellate District upheld an investigatory traffic stop made upon suspicion that the defendant was driving under suspension based upon information that was less than a week old. The appellate court rejected the argument that the Fourth Amendment requires an officer to verify such information before initiating the traffic stop, stating, "it may be better practice for a police officer to run a computer check before making a stop when the officer has reason to believe that the driver may not have a valid license, but we agree with the court in [*Ellison*] that the failure to do so does not rise to the level of a constitutional infirmity." *Johnson*, 1998 Ohio App. LEXIS 1047 at *5, citing

- 6 -

*State v. Ellison*, 10th Dist. Franklin No. 93APC12-1696, 1994 Ohio App. LEXIS 3146 (July 14, 1994).

{¶ 19} In support of his argument that the investigatory traffic stop violated the Fourth Amendment because it was based upon unverified, "stale" information, Lung relies entirely upon *State v. Tackett*, 37 Ohio Misc. 2d 9 (C.C.1987). *Tackett* involved an investigatory traffic stop made upon suspicion that the defendant was driving under suspension based upon information that was 30 to 45 days old. The county court granted the defendant's motion to suppress evidence, finding that the information relied upon by the officer was "stale." *Id.* at 10. Noting there are numerous ways a person may regain driving privileges, the county court held, "it is not asking too much, in view of modern radio and telecommunications, to require a police officer to obtain confirmation of the license status of an individual he recognizes * * * prior to stopping that individual." *Id.* Thus, the county court found that the traffic stop violated the Fourth Amendment.

{¶ 20} *Tackett*'s ruling that the Fourth Amendment requires verification of the information prior to a traffic stop arose from the predicate finding that the information was "stale." Neither *Tackett* nor other cases establish a bright line test for how much time must pass before information should be considered "stale." However, based upon the time frames involved in the various cases referred to by the trial court, we do not believe that the 20-day-old information relied upon by Officer Beatty was "stale." Thus, we do not find *Tackett* applicable in resolving whether Officer Beatty was constitutionally required to verify that Lung's driving privileges remained suspended before stopping him.

{¶ 21} In a case from the Eleventh Appellate District, a police officer stopped the defendant's vehicle based upon suspicion that the defendant was driving under suspension because of an incident that had occurred two years prior to the stop. *State v. Cone*, 11th Dist. Lake Case No. 89-L-14-135, 1990 Ohio App. LEXIS 5670 (Dec. 21, 1990). The officer

subsequently arrested the defendant for OVI. Prior to taking the defendant to the police station, the officer confirmed with dispatch that the defendant's driving privileges were suspended. The defendant unsuccessfully moved to suppress the evidence, challenging the legality of the traffic stop. The Eleventh Appellate District reversed the denial of the defendant's motion to suppress, finding that the information relied upon by the officer was "stale" and unverified. *Id.* at *6. In this respect, *Cone* is both similar to *Tackett* and distinguishable from the case at bar because it involved "stale" information. The information relied upon by Officer Beatty, although not current, was not "stale."

{¶ 22} In this case, Officer Beatty suspected that Lung had driven to the convenience store when he saw Lung standing in line. This concerned Beatty because three weeks prior, Lung's driving privileges were under suspension. It is important to note, however, that this suspicion is a step removed from a reasonable, articulable suspicion that Lung was driving under suspension. At this point, the officer had not seen Lung driving. Additionally, the officer knew that the store was within walking distance of Lung's apartment. Consequently, Officer Beatty returned to his police cruiser and waited for Lung to exit the store to confirm or dispel his suspicion that Lung had driven to the store. At the suppression hearing, Officer Beatty acknowledged that he had time to verify Lung's driving status while he waited in his police cruiser but simply did not do so. It was only after Lung exited the store and drove across the street to his apartment complex that the officer stopped Lung and verified that Lung's driver's license was still under suspension.

{¶ 23} Officer Beatty acted upon information that was three weeks old. As discussed above, this information was not "stale." Although the officer admitted that he could have but did not verify the information while he waited in the store parking lot for Lung, the information contributed to a "reasonable, articulable suspicion" of criminal activity only after the officer observed Lung driving. At that point, the situation was evolving rapidly with the

officer following Lung for approximately 100 yards from the convenience store parking lot to the apartment complex parking lot where he stopped Lung. Shortly after stopping Lung, Officer Beatty acted diligently in confirming his suspicion that Lung was driving under suspension.

{¶ 24} In evaluating the officer's actions under the Fourth Amendment, we are mindful that

> [It is] appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing. A creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But [t]he fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, itself, render the search unreasonable. The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.

(Ellipses omitted.) *State v. Howard*, 12th Dist. Preble Nos. CA2006-02-002 and CA2006-02-003, 2006-Ohio-5656, ¶ 22.

{¶ 25} We find that Officer Beatty had no duty under the Fourth Amendment to verify the status of Lung's driving privileges prior to observing Lung driving and that the officer acted reasonably in doing so shortly after stopping Lung. The trial court, therefore, did not err in denying Lung's motion to suppress.

{¶ 26} Lung's assignment of error is overruled.

{¶ 27} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.