[Cite as *State v. Owensby*, 2022-Ohio-1702.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellant, | : | CASE NO. CA2021-08-092 |
| - vs - | : | O P I N I O N<br>5/23/2022 |
| | : | |
| CORTEZ OWENSBY, | : | |
| Appellee. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2020-08-0998

Michael T. Gmoser, Butler County Prosecuting Attorney, and Willa Concannon, Assistant Prosecuting Attorney, for appellant.

Michele Temmel, for appellee.

**PIPER, J.**

{¶1}  Appellant, the state of Ohio, appeals a decision of the Butler County Court of Common Pleas granting the motion to suppress of appellee, Cortez Owensby.

**I. Facts and Procedural History**

{¶2}  On July 2, 2020, Detective Mark Hoyle and Detective Marco Caito were on patrol in an unmarked vehicle at the intersection of Clark Street and Manchester Avenue in Middletown, Ohio.  At some point, Detective Caito received a phone call from a confidential

informant ("CI") who had proven to be highly reliable on prior occasions reporting that Owensby, a known drug offender, had "a large quantity of drugs" and was leaving the apartments located at 1505-1507 Manchester Avenue in a white car.

{¶3} Shortly after the CI's call, Detective Hoyle observed Owensby in the front passenger seat of a white Kia driven by Brandy Carmody. Consistent with the CI report, the white Kia was seen leaving the Manchester Avenue Apartments. The vehicle then drove past the detectives on Clark Street. Detective Hoyle began following the vehicle and reported the license plate information to another nearby unit on patrol, Officer Dennis Jordan.

{¶4} Officer Jordan ran the plate information and learned that the vehicle was registered to Carmody. He also learned that she had a suspended driver's license and an active warrant for her arrest. Within seconds, Officer Jordan observed the white Kia drive past him.

{¶5} Officer Jordan stopped the white Kia at 4:24 p.m. near Gardner Park. Carmody was arrested without incident by another officer. Based upon a bulletin he received earlier in the day, Officer Jordan suspected that Owensby may be in the possession of a weapon. In that bulletin, the Franklin Police Department reported that Owensby had recently displayed a gun and threatened Carmody. With that information, Officer Jordan ordered Owensby out of the car and conducted a weapons pat down. Officer Jordan felt a large wad of cash in Owensby's pocket but did not remove it at that time. Owensby admitted he was carrying approximately $2,500 in cash and told Officer Jordan it was his "stimulus money." Following the weapons pat down, Officer Jordan concluded that Owensby did not have a weapon and ordered him to sit on a nearby planter.

{¶6} Officer Jordan deployed his canine partner, Koda, and conducted a standard undirected search of the vehicle. He then commanded Koda to conduct a directed search

where he pointed to specific areas for Koda to search. Both times, Koda alerted on the front passenger seat where Owensby had been seated. The canine sniff took approximately two minutes. At that point, Owensby had been detained approximately 13 minutes. During the canine sniff, Owensby appeared to be "excessively nervous" and was visibly shaking with his head placed in his hands.

{¶7} Based upon the canine alert, Officer Jordan searched the vehicle for narcotics. After approximately 13 minutes, Officer Jordan located a drawstring or sling bag containing approximately 30 grams of marijuana, a minor misdemeanor amount of the drug.[1] Owensby admitted that the marijuana was his. However, Officer Jordan stated that Owensby remained agitated and extremely nervous.

{¶8} Approximately 27 minutes into the stop, Officer Smith, a former corrections officer, arrived as backup. Officer Smith was new to the Middletown Police Department and had only been on the job for a few months. Officer Jordan instructed Officer Smith to do a "jail type" search on Owensby, meaning that he wanted him thoroughly searched. In the meantime, Officer Jordan continued searching the passenger compartment for more contraband.

{¶9} Officer Smith reported back to Officer Jordan that he had searched Owensby but did not find anything. Owensby was then placed in the back of Officer Smith's cruiser but was not handcuffed. Officer Jordan then turned off his body microphone so that he could privately call Detective Hoyle. The two evaluated whether the drugs could still be on Owensby and discussed what a "large amount" of drugs meant in context of the tip from the CI. Officer Jordan concluded that the drugs had to be in Owensby's possession and

---

1. Possession of marijuana in an amount less than 100 grams is a minor misdemeanor. R.C. 2925.11(C)(3)(a)-(b).

decided to search him personally.

**{¶10}** Shortly after the "jail type" search, Officer Jordan conducted another search of Owensby, which he described as a "credit card" search. Officer Jordan explained that he slid his hands between Owensby's thighs and along his groin. During this process, Officer Jordan felt a hard, irregular shaped lump with sharp edges concealed in the fly of Owensby's underwear. Based on his training and experience, Officer Jordan knew that the fly of men's underwear was a common place to conceal drugs and he immediately suspected the package contained drugs. Officer Jordan then removed the object and placed Owensby under arrest. Lab testing confirmed that the package contained methamphetamine and fentanyl.

**{¶11}** Owensby was indicted on one count of possession of a fentanyl-related compound and one count of aggravated possession of drugs.[2] Owensby moved to suppress evidence pursuant to Crim.R. 12(C)(3) and a hearing was held before the court. At the hearing, Officer Jordan and Detective Hoyle testified. The court admitted Officer Jordan's cruiser-cam video as an exhibit.

**{¶12}** Following the hearing, the trial court granted the motion to suppress and issued a written entry. The state now appeals the trial court's decision, raising one assignment of error.

## II. Appeal

**{¶13}** THE TRIAL COURT ERRED AS A MATTER OF WELL-ESTABLISHED FOURTH AMENDMENT LAW WHEN IT GRANTED OWENSBY'S MOTION TO SUPPRESS THE METHAMPHETAMINE AND FENTANYL POLICE RECOVERED FROM OWENSBY'S UNDERWEAR.

---

2. Owensby was also charged with two additional counts in the same indictment for separate conduct that occurred on July 28, 2020. However, those charges are not applicable to the facts in this appeal.

{¶14} In its sole assignment of error, the state alleges the trial court erred by suppressing the methamphetamine and fentanyl recovered from Owensby's underwear. The constitutionality of the search in this case involves consideration of several different phases of the entire incident culminating in the final "credit card" search that led to the discovery of drugs on Owensby's person.

{¶15} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Shaibi*, 12th Dist. Warren No. CA2020-07-038, 2021-Ohio-1352, ¶ 24. The trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586, ¶ 16. Therefore, when reviewing a trial court's decision on a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Lynn*, 12th Dist. Butler Nos. CA2017-08-129 and CA2017-08-132, 2018-Ohio-3335, ¶ 15. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶16} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution prohibit unreasonable searches and seizures. *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563 at ¶ 11. The touchstone of the Fourth Amendment is reasonableness. *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, ¶ 14, citing *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801 (1991). A passenger in an automobile involved in a traffic stop is "seized" and may challenge the constitutionality of the stop. *Brendlin v. California*, 551 U.S. 249, 251, 127 S.Ct. 2400 (2007). Where a law enforcement officer has probable cause or an articulable, reasonable suspicion to stop a

motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996); accord *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 23.

{¶17} The establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. *State v. Pfeiffer*, 12th Dist. Butler No. CA2003-12-329, 2004-Ohio-4981, ¶ 23. "Probable cause is determined by examining the historical facts, i.e., the events leading up to a stop or search, 'viewed from the standpoint of an objectively reasonable police officer.'" *Godwin*, 2006-Ohio-3563 at ¶ 14, quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657 (1996). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317 (1983).

{¶18} The reasonable suspicion standard, on the other hand, is a less demanding standard than probable cause but still requires more than an officer's undeveloped suspicion or hunch. *State v. Moore*, 12th Dist. Fayette No. CA2010-12-037, 2011-Ohio-4908, ¶ 33. Reasonable suspicion is "based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, ¶ 10, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, (1991).

**A. Reasonableness of stop and pat down undisputed**

{¶19} We begin our analysis by noting that there is no dispute concerning the reasonableness of the initial stop and the weapons pat down on Owensby. In this case, Officer Jordan stopped the vehicle because he was aware that Carmody had a warrant for her arrest and was driving on a suspended license. *State v. Watts*, 12th Dist. Butler No. CA2005-08-364, 2007-Ohio-221, ¶ 13 (stop for driving on a suspended license); *State v.*

*Lung*, 12th Dist. Clermont No. CA2018-12-088, 2019-Ohio-2962, ¶ 23 (stop for driving on a suspended license); *State v. Thomas*, 6th Dist. Williams No. WM-18-005, 2019-Ohio-2654, ¶ 7 (officer may lawfully stop a vehicle to make an arrest).

{¶20} Furthermore, the weapons pat down of Owensby was permissible for multiple reasons. First, there is no dispute that Officer Jordan had received a bulletin that Owensby displayed a gun and threatened Carmody earlier that day. "Once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons if the officers reasonably believe that the suspect may be armed or a danger to the officers or to others." *State v. Jimenez*, 12th Dist. Warren No. CA2011-09-103, 2012-Ohio-3318, ¶ 14. In this case, Officer Jordan had reasonable suspicion that Owensby was in the possession of a weapon based upon that bulletin. Furthermore, Officer Jordan was also aware that Owensby was a known drug offender and that a highly reliable CI had reported that Owensby had a "large quantity of drugs." As the supreme court has previously held, an officer's right to conduct a weapons pat down is "virtually automatic when individuals suspected of committing a crime like drug trafficking, for which they are likely to be armed." *State v. Evans*, 67 Ohio St.3d 405, 413 (1993). Accordingly, there was no constitutional infirmity with the vehicle stop or the weapons pat down of Owensby.

### B. Contested aspects of the stop

### 1. Trial court's decision

{¶21} Consistent with what we listed above, the trial court did not grant the motion to suppress based upon the stop or the weapons pat down.[3] Instead, the trial court focused its analysis on the "credit card" search leading to the discovery of the drugs. In so doing, the trial court did not address whether Officer Jordan or Officer Smith had probable cause

---

3. The trial court did discuss the canine sniff but did not render any conclusions of law.

to search Owensby. Instead, the trial court's analysis rested almost entirely upon the fact that Officer Smith failed to locate any drugs on Owensby during the "jail type" search. The trial court found that since Officer Smith's "jail type" search revealed nothing, that any "reasonable suspicion" that Owensby was in the possession of drugs had dissipated.[4] Therefore, the trial court ruled that Officer Jordan was not permitted to conduct the "credit card" search and suppressed the evidence from that search. However, in so doing, the trial court did not explain why the suspicion of criminality dissipated or how the discovery of marijuana should lead Officer Jordan to abandon his suspicions of criminal activity. The trial court merely stated:

> A review of the totality of the circumstances, especially after watching the video of the entire stop, does not show, in the Court's opinion, that Officer Jordan had a reasonable articulable suspicion that the defendant was engaged in criminal activity. Even though the CI had provided information in the past that had led to the arrest and conviction of other individuals, when numerous searches of the car and the pat-down and subsequent "jail-search" failed to uncover any other contraband other than the minor misdemeanor amount of marijuana found on the initial search of the car, any reasonable and articulable suspicion was gone. The $2500 in cash found on the defendant certainly could have been from his stimulus check.

{¶22} The trial court went on to conclude, that "[e]ven if * * * reasonable and articulable suspicion was still present," only a further brief detention would have been permissible. The trial court determined that this was not a brief detention and discussed certain details contained in the cruiser cam video, such as how the officers searched the vehicle on their "hands and knees."[5] With those facts in mind, the trial court found that

---

4. For reasons unclear, the trial court conducted a *Terry* analysis rather than a probable cause analysis.

5. The mere duration of a stop, although relevant, is not determinative when an officer is investigating for reasonable suspicion of criminal activity. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *State v. Grenoble*, 12th Dist. Preble No. CA2010-09-011, 2011-Ohio-2343, ¶ 28. *E.g., State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184 (canine sniff 23 minutes after traffic stop was not unconstitutional); *State v.*

Owensby's continued detention and the search that led to the discovery of the drugs were impermissible under the Fourth Amendment and granted the motion to suppress.

## 2. Owensby's arguments on appeal.

**{¶23}** Unsurprisingly, Owensby agrees with the trial court's decision granting his motion to suppress. Although he agrees that the initial stop and weapons pat down were permissible, he argues that his "continued detention and warrantless searches [were] blatantly unconstitutional."

**{¶24}** Owensby further argues that the court was "spot on when it stated that after the finding of marijuana and $2,500.00 in stimulus money, any reasonable suspicion that Mr. Owensby was engaged in criminal activity was extinguished."[6] Thereafter, Owensby claims that Officer Jordan "mistakenly" instructed Officer Smith to conduct the "jail type" search. Owensby claims that Officer Jordan lacked probable cause to secure a warrant for the search and argues there were no exigent circumstances to justify the warrantless search of his person. He further maintains that the "jail search" revealed "absolutely nothing" and alleges he was illegally detained and searched when Officer Jordan conducted the "credit card" search that led to the discovery of the drugs.

## 3. The state's argument on appeal

**{¶25}** The state disagrees with nearly every aspect of the trial court's decision, citing

---

*Beltran*, 12th Dist. Preble No. CA2004-11-015, 2005-Ohio-4194 (canine sniff 42 minutes after traffic stop was not unconstitutional); *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353 (canine sniff 28 minutes after traffic stop was not unconstitutional). Furthermore, once Officer Jordan had probable cause, he could detain Owensby "as long as reasonably necessary to complete the search of the vehicle." *State v. Vega*, 154 Ohio St.3d 569, 2018-Ohio-4002, ¶ 20. Officer Jordan had probable cause to search the vehicle when the dog alerted, which then later extended to probable cause to search Owensby's person as facts were developed and reviewed during the investigation, i.e., the discovery of marijuana yet no "large amount" of drugs found in the vehicle consistent with the otherwise verified information from the CI.

6. Owensby does not adequately explain why "reasonable suspicion" should have ended at this point. After all, the search of the vehicle did reveal the presence of marijuana. Furthermore, the record reflects that Koda was trained to detect not just marijuana, but also crack, cocaine, methamphetamine, and heroin.

both flaws in the court's legal analysis and its factual determinations.[7] The state maintains that the stop and initial pat down were valid. Following chronologically, the state details each aspect of the stop leading to the eventual conclusion that Officer Jordan possessed probable cause to search Owensby for drugs and that a warrantless search was necessary based upon exigent circumstances.

### C. Analysis

{¶26} Based upon a thorough review of the record, we find the trial court erred by granting Owensby's motion to suppress. Because the continuing chain of events leading up to the warrantless searches and discovery of the drugs are relevant to the issue of probable cause, we will review each aspect of the stop in succession. In general, courts should be mindful that, as investigations unfold, the facts and circumstances may change, and the duration of engagement reasonably expanded.

### 1. Canine sniff

{¶27} After Carmody was arrested, Officer Jordan reported Owensby's information to dispatch and was waiting to learn if Owensby had any warrants for his arrest or if he had the ability to drive the vehicle away from the scene. Therefore, Officer Jordan asked Owensby to sit on a nearby planter next to the park. Officer Jordan then deployed Koda to conduct a canine sniff of the white Kia because he had a reasonable and articulable suspicion that Owensby was involved in criminal activity based upon the tip from the CI. *State v. Bunn*, 12th Dist. Preble No. CA2011-08-009, 2012-Ohio-2151, ¶ 22 (informant's tip provided reasonable suspicion to investigate criminal activity). Moreover, a lawfully detained vehicle may be subjected to a canine sniff of the vehicle's exterior even without

---

7. For example, the state criticizes the trial court's focus on the length of the cruiser cam video. Although the trial court stated that the search lasted 50 minutes, the state maintains that Owensby was detained for only 35 minutes until establishing probable cause. The state maintains that the 50-minute cruiser cam video contains events occurring after the arrest, such as the time for towing Carmody's vehicle from the scene.

the presence of a reasonable suspicion of drug-related activity. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 25. This is because an "exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution." *Id.*

{¶28} As noted above, the trial court did not issue any conclusions of law concerning this aspect of the stop. However, because Owensby claims his continued detention was "blatantly unconstitutional," we find it necessary to address further. That is, despite his assertions otherwise, there is no merit to Owensby's claim that the continued stop and investigation violated his constitutional rights.

{¶29} At the point of the canine sniff, Owensby was legally detained, and Officer Jordan had reasonable suspicion that Owensby was engaged in criminal activity, specifically drug-related activity. There is no evidence that the stop was unconstitutionally prolonged or otherwise impermissible. Koda, Officer Jordan's canine partner, was on patrol with Officer Jordan and was deployed in less than 10 minutes after the stop. Furthermore, Owensby was a known drug offender and Officer Jordan had knowledge of the report from the CI. As a result, not only was the canine sniff "not a search," but Officer Jordan also possessed reasonable suspicion of drug-related activity and was permitted to dispatch his canine unit.

### 2. Warrantless search of the vehicle (automobile exception)

{¶30} Once deployed, Koda quickly alerted Officer Jordan to the presence of narcotics. There is ample case law that when a trained narcotics dog alerts to the presence of drugs from a lawfully detained vehicle, an officer has probable cause to search the entire vehicle for contraband. *State v. Maffey*, 12th Dist. Clermont No. CA2020-08-045, 2021-Ohio-2460, ¶ 31; *State v. Cruz*, 12th Dist. Butler No. CA2013-10-008, 2014-Ohio-4280, ¶

15; *State v. Dominguez*, 12th Dist. Preble No. CA2011-09-010, 2012-Ohio-4542, ¶ 22.[8] Accordingly, once Koda alerted to the presence of narcotics, Officer Jordan was permitted to search the vehicle without a search warrant.

**{¶31}** During this search, Officer Jordan searched the main cabin of the car, the trunk, and other items found in the car, such as a purse. Officer Jordan was later joined by two additional officers who assisted in the search of the vehicle. Officer Jordan noted that Owensby appeared excessively nervous during the search. Eventually, Officer Jordan located a drawstring or sling bag containing marijuana on the passenger side of the vehicle where Owensby had been seated. Owensby admitted the marijuana was his but remained agitated and excessively nervous.

### 3. Searches of Owensby

**{¶32}** After the discovery of the marijuana, and with all the information he had available to him at the time, Officer Jordan asked Officer Smith, a less experienced officer, to conduct a "jail type" search of Owensby's person.

**{¶33}** The decision to conduct a search under these circumstances is reasonable under the Fourth Amendment if: (1) probable cause exists to conduct the search, and (2) an exception to the warrant requirement applies. *State v. Young*, 12th Dist. Warren No. CA2011-06-066, 2012-Ohio-3131, ¶ 17. "If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed." *Id.*

**{¶34}** As noted above, probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179 ¶ 73. Instead, probable cause is a fluid concept assessing probabilities. *Gates*, 462 U.S. at 231. In determining whether a law

---

8. This is known as the "automobile exception" and is a well-established exception to the need for a warrant. *Maffey* at ¶ 21.

enforcement officer possessed probable cause to conduct a search, a court must review the totality of the circumstances known to the officer at the time of the search. *State v. Aslinger*, 12th Dist. Preble No. CA2011-11-014, 2012-Ohio-5436, ¶ 13.

### a. The two probable cause searches of Owensby were permissible

{¶35} The trial court did not go into specific detail concerning the "jail type" search of Owensby that was conducted by Officer Smith. The trial court noted that the "jail type" search was more intrusive than the prior weapons pat down but did not address whether the search was supported by probable cause. In any event, since Officer Smith was unable to locate any contraband on Owensby, the trial court concluded that all "reasonable articulable suspicion" that Owensby was engaged in criminal activity had dissipated and suppressed the evidence discovered during the subsequent "credit card" search.[9]

### i. "Jail type" search

{¶36} Although Officer Jordan had probable cause to search the entire vehicle under the automobile exception, the canine hit alone was not enough to establish probable cause to search Owensby's person. *State v. Chapman*, 7th Dist. Belmont No. 18 BE 0004, 2019-Ohio-3339, ¶ 51-53 (no appellate court in Ohio has held that a canine hit, alone, provides sufficient probable cause to search the occupants of a vehicle), citing *State v. Young*, 12th Dist. Warren No. CA2011-06-066, 2012-Ohio-3131, ¶ 22-23 (canine hit on a vehicle is one factor in the totality of the circumstances test applied to determine the existence of probable cause). However, this changed, at the very latest when Officer Jordan located the marijuana. When Officer Jordan found the marijuana, he had probable cause to search Owensby's person. *State v. Moore*, 90 Ohio St.3d 47, 50-51 (2000); *State v. Blevins*, 8th

---

9. The trial court also determined that there were no exigent circumstances to justify the search because the stop was a very short drive from the Middletown Police Department and Municipal Court where a judge might have been presented with an affidavit in support of a search warrant.

Dist. Cuyahoga No. 103200, 2016-Ohio-2937, ¶ 27.

{¶37} In *Moore*, a police officer stopped a defendant for a traffic violation. *Moore* at 49. When the defendant rolled down his window, the officer detected the strong odor of fresh burnt marijuana coming from the vehicle. *Id.* at 47. When the defendant stepped out of the vehicle, the officer also detected the odor on the defendant. *Id.* at 51. The officer then searched the defendant and the defendant's person, finding drug paraphernalia and marijuana. *Id.* at 53.

{¶38} The supreme court accepted review and considered the question of whether "the odor of burnt marijuana, alone, [was] sufficient to provide probable cause to search a defendant's motor vehicle" and a defendant's person. *Id.* at 48. The supreme court answered affirmatively and upheld both searches because it found that the smell of marijuana alone by an officer experienced in smelling it was sufficient probable cause to search the defendant's vehicle and person. *Id.* at ¶ 50.

{¶39} The facts in this case are not the same as the facts in *Moore* because there is no indication that Owensby smelled of marijuana. However, there is a more analogous case from our sister district that discusses *Moore* when marijuana is actually observed by law enforcement. In *Blevins*, the Eighth District found an officer had probable cause to search a defendant after smelling marijuana and then observing the drug in plain view.[10] *Blevins*, 2016-Ohio-2937 at ¶ 35. Similar to this case, the officer in *Blevins* did not state that he smelled marijuana on the defendant's person, rather the court determined the officer had probable cause to search the defendant's person because he had actually seen the marijuana in the car. *Id.* In other words, the court found that the facts were "even stronger than they were in *Moore*" because the officer did not just smell marijuana, he saw it in plain

---

10. It is no consequence that possession of marijuana under 100 grams is a minor misdemeanor. *State v. Perryman*, 8th Dist. Cuyahoga No. 82965, 2004-Ohio-1120, ¶ 19.

view. *Id.*

**{¶40}** In this case, Officer Jordan found Owensby's marijuana during the valid search of the vehicle and Owensby admitted the drugs were his. As in *Blevins*, this is enough to constitute probable cause to search Owensby's person. Furthermore, the discovery of marijuana was not the only fact that supported probable cause. By the time Officer Jordan asked Officer Smith to conduct the "jail type" search on Owensby, Officer Jordan had learned of a number of facts to support a finding of probable cause. Here, Owensby was a known drug offender and Officer Jordan was investigating a tip from a highly reliable CI that Owensby was leaving the Manchester Avenue Apartments with a "large quantity of drugs" in a white car. Officer Jordan was made aware of the tip by Detective Hoyle. *State v. Kelley*, 4th Dist. Ross No. 10CA3182, 2011-Ohio-3545, ¶ 25 (an officer may derive knowledge from an informant's tip). Immediately after the CI tip, Detective Hoyle was able to corroborate certain elements of the tip, for example, that Owensby was leaving the Manchester Avenue Apartments in a white Kia.

**{¶41}** After stopping the vehicle, Officer Jordan conducted a brief weapons pat down on Owensby. Although he did not find a weapon, he noticed that Owensby was in possession of a large amount of cash. Upon questioning, Owensby admitted that he was in possession of a large amount of money, approximately $2,500, which he claimed was his "stimulus money." When Officer Jordan deployed his canine unit, Koda, the unit alerted to the presence of narcotics on the side of the vehicle where Owensby had been sitting. With probable cause to search the vehicle, Officer Jordan found marijuana, which Owensby admitted was his. Despite already finding drugs in the vehicle, Officer Jordan noticed that Owensby remained excessively agitated and excessively nervous under the circumstances. *State v. Raphael*, 12th Dist. Warren Nos. CA2014-11-138 and CA2014-11-139, 2015-Ohio-3179, ¶ 24 (nervousness one consideration in probable cause determination). Upon

continued discussion with Detective Hoyle, Officer Jordan concluded that the 30 grams of marijuana was inconsistent with the CI tip that Owensby was in possession of "a large quantity of drugs" and therefore determined that the drugs referenced by the CI were likely on Owensby's person. Considering the facts in their totality, we find that Officer Jordan had probable cause to search Owensby for drugs. Consequently, a warrantless search of Owensby was permissible if an exception to the warrant requirement applies. *Young*, 2012-Ohio-3131 at ¶ 17.

**{¶42}** As to that point, the supreme court has recognized that a warrantless search is justified if there is "imminent danger that evidence will be lost or destroyed if a search is not immediately conducted." *Moore*, 90 Ohio St.3d at 52. Because "narcotics are easily and quickly hidden or destroyed, a warrantless search may be justified to preserve evidence." *Id.* Here, because Officer Jordan had probable cause to believe that Owensby was in the possession of drugs, a warrantless search was justified to remove them because Owensby could have quickly hidden or destroyed them. *State v. Arrasmith*, 12th Dist. Madison No. CA2013-09-031, 2014-Ohio-4173, ¶ 20*; State v. Rodriguez*, 12th Dist. Butler No. CA2014-03-073, 2015-Ohio-571, ¶ 20. Accordingly, the "jail type" search conducted by Officer Smith was reasonable under the Fourth Amendment.

### ii. "Credit card" search

**{¶43}** While the "jail type" search did not lead to the discovery of other contraband, Officer Jordan questioned the adequacy of the search by Officer Smith, who was much less experienced and new to the department. This court has previously held that multiple searches can be justified if the second officer did not observe the original or was concerned about the adequacy of the search. *State v. Wyatt*, 12th Dist. Warren No. CA2020-11-076, 2021-Ohio-3146, ¶ 27; *State v. Bean*, 12th Dist. Butler No. CA2015-07-136, 2016-Ohio-876, ¶ 17. Here, the record reflects that Officer Jordan did not observe the "jail type" search.

After Officer Smith failed to locate any drugs on Owensby, Officer Jordan called Detective Hoyle to discuss whether the marijuana was consistent with the CI tip. Concluding that the drugs had to be on Owensby, Officer Jordan conducted the "credit card" search shortly after the "jail type" search and stated that he did so because he was concerned about the adequacy of Officer Smith's search. Upon searching Owensby, Officer Jordan felt a hard, irregular shaped lump concealed in the fly of Owensby's underwear that turned out to be methamphetamine and fentanyl. Contrary to the trial court's finding below, we do not find that Officer Smith's failure to locate any drugs during the "jail type" search dissipated any concerns of criminal activity. By the time, Officer Jordan conducted the "credit card" search on Owensby, he had obtained ample evidence justifying a probable cause search of Owensby's person. When Officer Smith, the less experienced officer, failed to discover drugs after patting down Owensby, we do not find it unreasonable for Officer Jordan to question the thoroughness of the search, especially in light of the evidence justifying a probable cause search. Considering all of the facts and circumstances, we find the "credit card" search was reasonable, supported by probable cause, and justified based upon exigent circumstances.

### D. Conclusion

{¶44} After reviewing the record, we find the trial court erred by granting Owensby's motion to suppress. In this case, Officer Jordan had probable cause to search Owensby for drugs based upon the totality of the circumstances and the warrantless search was further justified by the existence of exigent circumstances. Accordingly, the state's sole assignment of error is sustained.

{¶45} Judgment reversed and remanded.

M. POWELL, P.J., and HENDRICKSON, J., concur.