[Cite as *State v. Kepler*, 2026-Ohio-223.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-04-026 |
| vs. | : | OPINION AND JUDGMENT ENTRY 1/26/2026 |
| AARON R. KEPLER, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI 2024-5022

Brian A. Shidaker, Clinton County Prosecuting Attorney, and Nicholas R. Smith, Assistant Prosecuting Attorney, for appellee.

Cicero Adams, LLC, and Jay A. Adams, for appellant.

### **O P I N I O N**

**SIEBERT, J.**

{¶ 1} Appellant, Aaron Kepler, appeals from his conviction in the Clinton County Court of Common Pleas for improper handling of a firearm in a motor vehicle. Upon review, we conclude that the search of Kepler's vehicle was a lawful search incident to

arrest, supported by probable cause arising from his traffic violation and impairment while operating a vehicle. Furthermore, we find that Kepler's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Accordingly, we overrule both assignments of error and affirm the judgment of the trial court.

**Factual and Procedural Background**

*January 9, 2024*

{¶ 2}   On January 9, 2024, Officers Jonathan Pullin and Homer Wisecup of the Wilmington Police Department observed a blue pickup truck, driven by Kepler, traveling without an illuminated rear license plate. The officers then saw Kepler make a right-hand turn followed immediately by a left-hand turn into a United Dairy Farmers ("UDF") gas station. Thereafter, Kepler pulled up to a gas pump, and the officers initiated a traffic stop. Kepler exited his vehicle and refused commands to return to the driver's seat. Upon contact, Officer Pullin noted that Kepler's speech was slurred and that he emitted an odor of an alcoholic beverage. Officer Pullin also observed that Kepler had difficulty maintaining his balance and saw an empty beer can in the bed of the truck.

{¶ 3}   Kepler admitted to consuming one beer and stated that he had smoked marijuana a few hours earlier. During the encounter, Kepler was "not very compliant" and became "aggressive at certain points." Officer Pullin requested assistance from the Ohio State Highway Patrol for field sobriety testing. Sergeant Michael Ross subsequently arrived and administered the tests.

{¶ 4}   Sergeant Ross testified that Kepler was unable to follow the stimulus during the horizontal gaze nystagmus test, rendering the test invalid. Sergeant Ross then conducted additional tests, including the walk-and-turn and the one-leg stand tests. On the walk-and-turn test, Kepler exhibited seven of eight impairment clues, such as moving his feet to maintain balance, failing to touch heel-to-toe, and walking backward contrary

to instructions. On the one-leg stand test, Kepler displayed all four impairment clues, including swaying, hopping, placing his foot down, and quitting after only a few seconds.

{¶ 5}   Sergeant Ross also asked Kepler to count backward from 67 to 52. Kepler stopped at "57 or 58" and asked what number he was supposed to reach. In addition to these test results, Sergeant Ross observed that Kepler's eyes were red, bloodshot, and glossy, his pupils were dilated, he swayed while standing, and he struggled to follow directions. Based on these observations, Sergeant Ross concluded that Kepler was under the influence of alcohol. Kepler was arrested and cited for operating a vehicle under the influence ("OVI") and failing to illuminate his rear license plate.[1]

{¶ 6}   During a search of Kepler's vehicle, officers located multiple, loaded firearms. On February 23, 2024, a Clinton County Grand Jury indicted Kepler on one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(D)(1), a fifth-degree felony.

*Motion to Suppress and Subsequent Hearing*

{¶ 7}   On August 1, 2024, Kepler filed a motion to suppress, arguing that no violation of the rear license plate statute had occurred, that the field sobriety tests were improperly administered, and that all evidence obtained following his arrest should be suppressed as the "fruit of the poisonous tree."

{¶ 8}   The trial court held an evidentiary hearing on September 18, 2024. The State presented testimony from Officer Pullin and Sergeant Ross. Officer Pullin testified that he observed Kepler driving without an illuminated rear license plate, making an improper turn into the UDF gas station, and exhibiting signs of impairment during the stop. He noted that Kepler emitted an odor of an alcoholic beverage, swayed, had difficulty

---

1. The record provides no additional details regarding the original charges. The case was subsequently bound over and proceeded exclusively on the improper handling charge.

maintaining balance, and an open beer can was visible in the truck bed. Officer Pullin also testified that Kepler was uncooperative and slipped his handcuffs from behind his back in front of him. Sergeant Ross testified regarding the administration of the field sobriety tests and his reasons for concluding that Kepler was under the influence.

{¶ 9} Following the hearing, the trial court received written arguments from both parties. After taking the matter under advisement, the court issued a decision on November 19, 2024, denying Kepler's motion to suppress. The court found that the initial traffic stop was valid based on probable cause that Kepler's rear license plate was not illuminated, that there was probable cause to arrest Kepler for operating a vehicle under the influence, and that the subsequent search of the vehicle was a lawful search incident to arrest.

*Trial and Verdict*

{¶ 10} The matter proceeded to a jury trial. The State presented testimony from Officer Wisecup and Sergeant Ross regarding the incident and their interactions with Kepler. The State also called Patrick McLaughlin, a firearms examiner with the Miami Valley Regional Crime Lab, who testified that the firearms recovered from Kepler's vehicle were operable. At the close of the State's case-in-chief, Kepler moved for acquittal pursuant to Crim.R. 29, which the trial court denied. Kepler then rested without calling any witnesses.

{¶ 11} The jury returned a verdict finding Kepler guilty of improperly handling firearms in a motor vehicle. The trial court sentenced Kepler to community control and imposed a six-month term of incarceration in the Clinton County Jail. Kepler now appeals, raising two assignments of error for review.

**Appeal**

**I. Motion to Suppress**

- 4 -

{¶ 12} In his first assignment of error, Kepler argues that the trial court erred in denying his motion to suppress evidence.[2]

{¶ 13} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Owensby*, 2022-Ohio-1702, ¶ 15 (12th Dist.). The trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Casey*, 2014-Ohio-2586, ¶ 16 (12th Dist.). Therefore, when reviewing a trial court's decision on a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Lynn*, 2018-Ohio-3335, ¶ 15 (12th Dist.). "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 2007-Ohio-3353, ¶ 12 (12th Dist.).

{¶ 14} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution prohibit unreasonable searches and seizures. *Bowling Green v. Godwin*, 2006-Ohio-3563, ¶ 11. A traffic stop is constitutionally valid where an officer has probable cause or a reasonable, articulable suspicion to believe a motorist committed any criminal violation, including a minor traffic offense. *Owensby* at ¶ 16.

{¶ 15} Ohio recognizes two types of lawful traffic stops. *State v. Ratliff*, 2020-Ohio-3315, ¶ 6 (12th Dist.). The first is a non-investigatory stop based on probable cause arising from an observed traffic violation. *Id*. The second is an investigative or "*Terry*" stop, which occurs when an officer has a reasonable suspicion based upon specific and

_____

2. Kepler styled his motion to suppress as a "motion to suppress/dismiss," and he adopts the same approach in his appellate brief. However, the arguments he advances for suppression and dismissal are identical. Regardless of how Kepler characterizes his position—whether as a motion to suppress or a motion to dismiss—those arguments are overruled.

- 5 -

articulable facts that criminal behavior has occurred or is imminent. *State v. Hinkston*, 2020-Ohio-6903, ¶ 15 (12th Dist.) citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

{¶ 16} When law enforcement stops a driver in a vehicle based on probable cause that a traffic violation has occurred, the stop is reasonable under the Fourth Amendment. *Dayton v. Erickson*, 1996-Ohio-431, syllabus. During such a stop, an officer may detain the motorist for the time reasonably necessary to issue a citation and complete routine procedures, including checking the driver's license, registration, and vehicle plates. *State v. Hill*, 2015-Ohio-4655, ¶ 8 (12th Dist.). The authority for the stop ends when tasks related to the traffic infraction are—or reasonably should have been—complete. *State v. Shaibi*, 2021-Ohio-1352, ¶ 26 (12th Dist.). However, the detention may be extended when additional facts arise that give rise to a reasonable, articulable suspicion of criminal activity beyond the original purpose of the stop. *State v. Batchili*, 2007-Ohio-2204, ¶ 15. In such cases, an officer may detain the vehicle for a reasonable period to confirm or dispel that suspicion. *State v. Williams*, 2010-Ohio-1523, ¶ 18 (12th Dist.).

{¶ 17} Here, officers stopped Kepler after observing that he was operating a vehicle without an illuminated rear license plate, in violation of R.C. 4513.05 ("Either a tail light or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate, when such registration plate is required, and render it legible from a distance of fifty feet to the rear."). Officer Pullin testified that Kepler's vehicle had no light illuminating the rear plate. Kepler argues that the law enforcement did not have reasonable suspicion to conduct the traffic stop "solely because he did not see a light in the license plate area of the vehicle." Kepler makes much of the fact that Officer Pullin could not recall if the plate was legible from 50 feet because that is the "purpose" of the statute. Kepler's argument is without merit. Under Ohio law, a vehicle must have a light that illuminates the rear license plate, and that light must comply with the 50-foot

legibility standard. Kepler's car had no light illuminating the rear license—if there's no light, that light cannot "render" anything legible, from any distance. Based upon the officer's observations regarding the missing light, the officers initiated a lawful non-investigatory traffic stopped based upon probable cause.

{¶ 18} But our review of the trial court's denial of the motion to suppress does not end at the missing rear light. The next question is whether additional facts gave rise to the officers' reasonable, articulable suspicion that Kepler was engaged in criminal activity beyond the original purpose of the stop, which would legally justify extending the stop into a "*Terry*" stop. In short, they did.

{¶ 19} We are unpersuaded by Kepler's citations to cases holding the defendant smelling of an alcoholic beverage without testimony regarding the intensity or strength of the odor cannot support a reasonable and articulable suspicion of OVI. Upon approaching the vehicle, Officer Pullin detected an odor of an alcoholic beverage and observed additional indicia of impairment, including slurred speech, difficulty maintaining balance, and an open beer can in the truck bed. These observations provided Officer Pullin with a reasonable and articulable suspicion that Kepler was operating a vehicle under the influence, legally justifying extending Kepler's detention beyond the initial traffic stop. *Batchili*, 2007-Ohio-2204, at ¶ 15.

{¶ 20} Officer Pullin requested assistance from the Ohio State Highway Patrol to conduct standardized field sobriety tests; the patrolman arrived within ten minutes of Pullin's request. Kepler argues this delay amounted to an unconstitutional prolonged detention of Kepler. Notably, Kepler did not argue to the trial court that the delay associated with awaiting Sergeant Ross' arrival was impermissible. A ten minute delay to ensure that a field sobriety test is conducted by an officer with a higher degree of relevant training was not unreasonable when the officer considered the totality of the

circumstances. *See Hinkston*, 2020-Ohio-6903, at ¶ 18. Upon arrival, Sergeant Ross administered multiple field sobriety tests and concluded that Kepler was under the influence. The officers subsequently arrested Kepler and searched his vehicle incident to arrest. *State v. Pirpich*, 2007-Ohio-6745, ¶ 10 (12th Dist.). While Kepler argues otherwise, we find that both the traffic stop and the arrest were supported by probable cause. Kepler's arguments to the contrary are unpersuasive. The officers acted appropriately in each step of the investigation, culminating in the lawful search incident to arrest. *See Owensby*, 2022-Ohio-1702, at ¶ 26. We therefore find no constitutional infirmity in either the traffic stop or the subsequent search that resulted in the discovery of the firearms.

{¶ 21} Accordingly, the trial court properly denied Kepler's motion to suppress. Kepler's first assignment of error is overruled.

## II. Sufficiency and Weight of the Evidence

{¶ 22} In his second assignment of error, Kepler contends that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶ 23} When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

{¶ 24} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court

must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.). As we have previously stated, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Whitt*, 2018-Ohio-1257, ¶ 13 (12th Dist.).

{¶ 25} Kepler was convicted of improper handling of a firearm in a vehicle in violation of R.C. 2923.16(D)(1), which provides that "[n]o person shall knowingly transport or have a loaded handgun in a motor vehicle if, at the time of that transportation or possession. . . [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." The plain language of this statute does not require the defendant to be convicted of a separate OVI charge to sustain a conviction under the improper handling of a firearm statute.

{¶ 26} After reviewing the record, we conclude that Kepler's conviction for improper handling of a firearm in a vehicle was supported by sufficient evidence and was not against the manifest weight of the evidence. There is no dispute that Kepler was the driver of the vehicle and that loaded firearms were present. However, Kepler argues that because the Clinton County Grand Jury did not indict him on an OVI charge, the State failed to prove he was "under the influence of alcohol, a drug of abuse or a combination of them." This argument rests solely on Kepler's "understanding" of the grand jury proceedings, which is not part of the record. Grand jury proceedings are secret, and a defendant may inspect transcripts only upon a showing of particularized need outweighing the need for secrecy. *State v. Greer*, 66 Ohio St.2d 139 (1981), paragraph two of the syllabus. Here, Kepler made no such showing, nor is there any indication that

he made any attempt to do so. Accordingly, his claim that the grand jury declined to indict on OVI—and that this somehow undermines his conviction for improper handling of a firearm in a vehicle—is speculative and unsupported by the record. *State v. Thompson*, 2021-Ohio-2632, ¶ 17 (12th Dist.) (appellate courts will not speculate or guess about matters not reflected in the record).

{¶ 27} Kepler also argues that the State failed to prove beyond a reasonable doubt that he was under the influence of alcohol, a drug of abuse, or a combination of them, asserting that the testimony was inconsistent or insufficient. We disagree. In this case, the testimony revealed that Kepler performed poorly on multiple field sobriety tests, exhibiting seven of eight clues on the walk-and-turn test and all four clues on the one-leg stand test. Kepler also failed the counting test and displayed physical signs of impairment, including red, bloodshot eyes, dilated pupils, swaying, and drooping eyelids. Sergeant Ross concluded that Kepler was under the influence of alcohol. Despite Kepler's arguments, the jury was in the best position to assess witness credibility and weigh the evidence. *State v. Brown*, 2021-Ohio-2381, ¶ 19 (12th Dist.). The jury did not lose its way or create such a manifest miscarriage of justice that reversal is warranted. Accordingly, Kepler's second assignment of error is overruled.

{¶ 28} Judgment affirmed.

HENDRICKSON, P.J., and BYRNE, J., concur.

---

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clinton County Court of Common

- 10 -

Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Matthew R. Byrne, Judge

/s/ Melena S. Siebert, Judge